[PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-13963

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EUGENE JACKSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

D.C. Docket No. 1:19-cr-20546-KMW-1

_____

Before ROSENBAUM, JILL PRYOR, and ED CARNES, Circuit Judges.

ROSENBAUM, Circuit Judge:

The Armed Career Criminal Act, 18 U.S.C. § 924(e), mandates a fifteen-year minimum sentence for a defendant who possesses a firearm and satisfies any of 18 U.S.C. § 922(g)(1)'s conditions while having at least three qualifying "previous convictions." "[P]revious convictions" qualify if they are for a "violent felony or a serious drug offense, or both." 18 U.S.C. § 924(e)(1). This appeal concerns ACCA's definition of "serious drug offense."

A prior state conviction satisfies ACCA's definition of "serious drug offense" if it is one "involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (*as defined in section 102 of the Controlled Substances Act . . .*), for which a maximum term of imprisonment of ten years or more is prescribed by law." *Id.* § 924(e)(2)(A)(ii) (emphasis added). Not surprisingly, the Controlled Substances Act's list of controlled substances changes from time to time. We must decide which version of the controlled-substances list ACCA's definition of "serious drug offense" incorporates: the one in effect when the defendant violated 18 U.S.C. § 922(g)(1) (the "firearm offense") or the one in effect when the defendant was convicted of his prior state drug offense. We hold that the Supreme Court's reasoning in *McNeill v. United States*, 563 U.S. 816 (2011), requires us to conclude that ACCA's "serious drug offense" definition incorporates the version of the controlled-substances list in effect when the defendant was convicted of his prior state drug offense.

## I.

The facts here are straightforward. Eugene Jackson pled guilty to possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). In support of his guilty plea, the factual proffer shows that he unlawfully possessed a loaded firearm on September 26, 2017.

In Jackson's presentence investigation report, the probation officer concluded that Jackson qualified for a sentence enhancement under ACCA based on his prior criminal history. That is, the officer determined that, when Jackson possessed the firearm, he had at least three prior convictions for a "violent felony or a serious drug offense, or both, committed on occasions different from one another." *Id.* § 924(e)(1). And under those circumstances, ACCA mandates a fifteen-year minimum sentence for violation of the firearm prohibition in 18 U.S.C. § 922(g).

Although Jackson conceded that he had two prior convictions that satisfy ACCA's definition of a "violent felony,"[1] he objected to the probation officer's conclusion that his two cocaine-related convictions met ACCA's "serious drug offense" definition. But the district court overruled Jackson's objection, finding that his cocaine-related convictions did qualify. Based on that

---

[1] As relevant here, these prior offenses of Jackson's are "violent felon[ies]" because each had "as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 924(e)(2)(B)(i).

determination, the district court sentenced Jackson to ACCA's mandatory fifteen-year minimum.

Jackson now appeals his sentence.

## II.

We review de novo the legal question whether a prior state conviction qualifies as a "serious drug offense" under ACCA. *United States v. Conage*, 976 F.3d 1244, 1249 (11th Cir. 2020) (citing *United States v. Robinson*, 583 F.3d 1292, 1294 (11th Cir. 2009)). When we conduct our review, federal law binds our construction of ACCA, and state law governs our analysis of elements of state-law crimes. *Id.* (quoting *United States v. Braun*, 801 F.3d 1301, 1303 (11th Cir. 2015)).

## III.

Jackson contends that neither of his prior cocaine-related convictions under Florida Statute § 893.13 meets ACCA's definition of a "serious drug offense." So we turn to that definition. As we have noted, ACCA defines a "serious drug offense" to include "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. [§] 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii).

To determine whether a prior conviction under state law qualifies as a "serious drug offense," we focus on "the statutory

21-13963                Opinion of the Court                5

definition of the state offense at issue, rather than the facts underlying the defendant's conviction." *Conage*, 976 F.3d at 1250. We call this the "categorical approach." *Id.* (quoting *Robinson*, 583 F.3d at 1295).

Under this approach, a state conviction cannot serve as an ACCA predicate offense if the state law under which the conviction occurred is categorically broader—that is, if it punishes more conduct—than ACCA's definition of a "serious drug offense." *See id.* So if there is conduct that would violate the state law but fall outside of ACCA's "serious drug offense" definition, the state law cannot serve as a predicate offense—"regardless of the actual conduct that resulted in the defendant's conviction." *Id.* Our task here, then, is to compare the state law that defines Jackson's prior cocaine-related offenses with ACCA's definition of a "serious drug offense" to see whether the state crime is categorically broader than a "serious drug offense."[2]

---

[2] Sometimes a statute is divisible, meaning it lists "elements in the alternative, and thereby define[s] multiple crimes." *Mathis v. United States*, 579 U.S. 500, 505 (2016). When that's the case, we use the "modified categorical approach" to assess whether a prior conviction qualifies as an ACCA predicate. *Id.* Under this modified categorical approach, we look "to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* at 505–06 (citing *Shepard v. United States*, 544 U.S. 13, 26 (2005)). We "then compare that crime, as the categorical approach commands," with ACCA's "serious drug offense" definition. *See id.* at 506. In contrast to the modified categorical approach, when the statute lists alternative means of

In conducting that analysis, we analyze "the version of state law that the defendant was actually convicted of violating." *McNeill*, 563 U.S. at 821. Here, Jackson's two potential "serious drug offenses" include convictions for violating Florida Statute § 893.13 in 1998 and in 2004 with conduct involving cocaine. In 1998 and in 2004, when Jackson was convicted of his cocaine-related offenses, Section 893.13(1) criminalized selling, manufacturing, delivering, or possessing with the intent to sell, manufacture, or deliver, cocaine and cocaine-related substances, including a substance called ioflupane ($^{123}$I) ("ioflupane").[3]

---

satisfying a single element, the standard categorical approach applies. *See id.* at 517. And under that approach, we presume that the defendant's conviction "rested upon nothing more than the least of the acts criminalized or the least culpable conduct." *United States v. Kushmaul*, 984 F.3d 1359, 1364 (11th Cir. 2021) (quotation marks omitted). As we explain in greater detail below, we assume without deciding that the standard categorical approach applies here. *See infra* note 9.

[3] At the time of Jackson's convictions, Section 893.13(1) prohibited selling, manufacturing, delivering, or possessing with the intent to sell, manufacture, or deliver, "a controlled substance." Fla. Stat. § 893.13(1) (1998); *see also id.* (2004). Florida law defined "[c]ontrolled substance" as "any substance named or described in Schedules I through V of s. 893.03." *Id.* § 893.02(4) (1998); *see also id.* (2004) ("'Controlled substance' means any substance named or described in Schedules I-V of s. 893.03."). Florida's Schedule II included "[c]ocaine or ecgonine, including any of their stereoisomers, and any salt, compound, derivative, or preparation of cocaine or ecgonine." *Id.* § 893.03(2)(a)(4) (1998); *see also id.* (2004). It's clear that definition encompassed ioflupane because the Florida Legislature has since amended Florida's Schedule II to expressly exempt ioflupane from that definition. *Id.* (2017); 2017

The federal version of Schedule II also encompassed ioflupane in 1998 and 2004, when Jackson was convicted of his Section 893.13(1) offenses.[4] But that changed in 2015. Then, the federal government exempted ioflupane from Schedule II because of its potential value in diagnosing Parkinson's disease. 80 Fed. Reg. at 54716; *see also* 21 C.F.R. § 1308.12(b)(4)(ii) (2017); *id.* (2021).[5] So in 2017, when Jackson possessed the firearm that resulted in his federal conviction under 18 U.S.C. § 922(g)(1) here, ioflupane was not a controlled substance "as defined . . . [under] the Controlled Substances Act," *id.* § 924(e)(2)(A)(ii).

Based on this fact, Jackson argues that Section 893.13(1), which punished ioflupane-related conduct when Jackson was convicted of his prior state drug offenses, is categorically broader than

---

Fla. Sess. Law Serv. Ch. 2017-110 (C.S.H.B. 505) (West); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 256–60 (2012) (explaining that "a change in the language of a prior statute presumably connotes a change in meaning").

[4] Until 2015, "ioflupane was, by definition, a schedule II controlled substance because it is derived from cocaine via ecgonine, both of which are schedule II controlled substances." Schedules of Controlled Substances: Removal of [123 I] Ioflupane from Schedule II of the Controlled Substances Act, 80 Fed. Reg. 54715, 54715 (Sept. 11, 2015) (codified at 21 C.F.R. § 1308.12(b)(4)(ii)).

[5] The Controlled Substances Act authorizes the Attorney General to "remove any drug or other substance from the schedules if he finds that the drug or other substance does not meet the requirements for inclusion in any schedule." 21 U.S.C. § 811(a); *see also id.* § 812 n.1 ("Revised schedules are published in the Code of Federal Regulations, Part 1308 of Title 21, Food and Drugs.").

ACCA's definition, which no longer punished ioflupane-related conduct when Jackson committed his present § 922(g)(1) firearm offense. This argument works if ACCA's definition incorporates the version of the controlled-substances schedules in effect when a defendant commits the firearm offense rather than the version in effect when he was convicted of his prior state drug offense. We consider, then, which version of the federal controlled-substances schedules ACCA's definition of "serious drug offense" incorporates: the one in place at the time of the prior state conviction, or the one in place at the time the defendant committed the present federal firearm offense.

We divide our discussion into two parts. In Section A, we explain why the Supreme Court's and our precedents on Section 893.13(1) do not answer the question we must address. Section B, in contrast, shows why the Supreme Court's reasoning in *McNeill* does. Section B then answers the question this case presents, before applying that answer to the facts in this appeal.

*A.*

The government identifies three decisions it says foreclose Jackson's argument. We think not.

21-13963                Opinion of the Court                9

In two of the decisions the government identifies, we addressed whether Section 893.13(1)'s lack of a mens rea element[6] with respect to the illicit nature of the controlled substance renders the state statute overbroad in comparison to ACCA's "serious drug offense" definition. And in all three decisions, the Supreme Court and this Court held that Section 893.13(1), which lacks a mens rea element as to the illicit nature of the controlled substance, qualifies as a "serious drug offense" under ACCA.

In *United States v. Travis Smith*, 775 F.3d 1262 (11th Cir. 2014), we held that ACCA's definition of a "serious drug offense" does not include a mens rea element with respect to the illicit nature of the controlled substance. *Id.* at 1267. Rather, that definition "require[s] only that the predicate offense 'involv[es],' . . . certain activities related to controlled substances." *Id.* (second alteration in original) (quoting 18 U.S.C. § 924(e)(2)(A)(ii)). And because Section 893.13(1) involves those activities, we held that a violation of the statute qualifies as a "serious drug offense" under ACCA—despite the fact that the statute lacks a mens rea element with respect to the illicit nature of the controlled substance. *Id.* at 1268. In so holding, we made clear that "[w]e need not search for the elements of" a generic definition of "serious drug offense" because that term is "defined by a federal statute . . . ." *Id.* at 1267.

---

[6] Mens rea is "[t]he state of mind that the prosecution, to secure a conviction, must prove that a defendant had when committing a crime . . . ." *Mens Rea*, *Black's Law Dictionary* (11th ed. 2019).

In *Shular v. United States*, 140 S. Ct. 779 (2020), the Supreme Court agreed. Shular argued that the definition of "serious drug offense" describes "not conduct, but [generic] offenses." *Id.* at 782. In his view, courts were required to "first identify the elements of the 'generic' offense" before asking "whether the elements of the state offense match those of the generic crime." *Id.* But the Court rejected that view, holding that ACCA's "'serious drug offense' definition requires only that the state offense involve the conduct specified in the federal statute; it does not require that the state offense match certain generic offenses." *Id.* Although *Shular* explicitly did not reach the mens rea issue we addressed in *Travis Smith*, *see Shular*, 140 S. Ct. at 787 n.3, the Court nevertheless affirmed our judgment that convictions under Section 893.13(1) do qualify as "serious drug offenses" under ACCA, *id.* at 784, 787; *see also United States v. Shular*, 736 F. App'x 876, 877 (11th Cir. 2018) (relying on *Travis Smith* to hold that Shular's convictions under Fla. Stat. § 893.13 qualify as serious drug offenses under ACCA), *aff'd*, 140 S. Ct. 779 (2020).

Finally, in *United States v. Xavier Smith*, 983 F.3d 1213 (11th Cir. 2020), relying on *Travis Smith* and *Shular*, we affirmed that "ACCA's definition of a serious drug offense 'requires only that the state offense *involve* the conduct specified in the [ACCA]'" and does not require a "'generic-offense matching exercise.'" *Id.* at 1223 (alteration in original) (quoting *Shular*, 140 S. Ct. at 782–84). And we again rejected the argument that Section 893.13(1) cannot qualify as a "serious drug offense" under ACCA because it lacks a

mens rea element. *See id.* ("Smith's argument that his prior convictions cannot qualify because the state offense lacks a mens rea element is foreclosed by our [*Travis*] *Smith* precedent and the Supreme Court's precedent in *Shular*.").

The government insists that these three decisions, together with our prior-panel-precedent rule, require us to conclude that Jackson's cocaine-related convictions under Section 893.13 are "serious drug offense[s]" because, in the government's view, we have already declared that Section 893.13 is a "serious drug offense." Under our prior-panel-precedent rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*." *In re Lambrix*, 776 F.3d 789, 794 (11th Cir. 2015) (quoting *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008)). And we have "categorically rejected an overlooked reason or argument exception to the prior-panel-precedent rule." *Id.*

But "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511 (1925); *see also, e.g.*, *United States v. Edwards*, 997 F.3d 1115, 1120 (11th Cir. 2021) ("[W]e weren't confronted with the question we face today . . . and so, of course, we had no occasion to resolve it."). And *Travis Smith*, *Shular*, and *Xavier Smith* did not address, as Jackson asks us to do here, whether ACCA's "serious drug offense" definition incorporates the

version of the controlled-substances schedules in effect when the defendant was convicted of his prior state drug offenses or the version in effect when he committed his present firearm offense.

Rather, those decisions presented two questions relating to ACCA's "serious drug offense" definition: first, whether the definition requires that the state offense match certain generic offenses, *see Travis Smith*, 775 F.3d at 1267; *Shular*, 140 S. Ct. at 782; and second, whether Section 893.13(1) convictions cannot qualify as ACCA predicates because that statute lacks a mens rea element with respect to the illicit nature of the controlled substance, *see Travis Smith*, 775 F.3d at 1267–68; *Xavier Smith*, 983 F.3d at 1223. In answering the two questions, the decisions construed the part of ACCA's "serious drug offense" definition that requires the state offense to involve the *conduct* of "manufacturing, distributing, or possessing with intent to manufacture or distribute." 18 U.S.C. § 924(e)(2)(A)(ii); *see Travis Smith*, 775 F.3d at 1267 (holding that ACCA's serious drug offense definition requires "only that the predicate offense involves . . . certain activities related to controlled substances" (alteration adopted and quotation marks omitted)); *Shular*, 140 S. Ct. at 782 (holding that ACCA's "'serious drug offense' definition requires only that the state offense involve the conduct specified in the federal statute"); *Xavier Smith*, 983 F.3d at 1223 (noting that "ACCA's definition of a serious drug offense 'requires only that the state offense *involve* the conduct specified in the ACCA'" (alteration adopted) (quoting *Shular*, 140 S. Ct. at 782)).

In contrast, this case asks us to construe the part of ACCA's "serious drug offense" definition that requires the state offense to involve "a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. [§] 802))." 18 U.S.C. § 924(e)(2)(A)(ii). At best, the *Smith* decisions and *Shular* assumed that this part of the "serious drug offense" definition and Section 893.13(1) encompass the same universe of substances. But "assumptions are not holdings." *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1239 (11th Cir. 2016); *see also Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993) ("[S]ince we have never squarely addressed the issue, and have at most assumed [the issue], we are free to address the issue on the merits."); *Fernandez v. Keisler*, 502 F.3d 337, 343 n.2 (4th Cir. 2007) ("We are bound by holdings, not unwritten assumptions."); *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985) ("[U]nstated assumptions on non-litigated issues are not precedential holdings binding future decisions."); *United States v. Norris*, 486 F.3d 1045, 1054 (8th Cir. 2007) (en banc) (Colloton, J., concurring in the judgment) (collecting decisions in which implicit assumptions, findings, or questions were not given precedential effect).

And *Travis Smith*, *Xavier Smith*, and *Shular* did not address the question this appeal presents: whether ACCA's "serious drug offense" definition incorporates the version of the federal controlled-substances schedules in effect when the defendant was convicted of his prior state drug offenses or the version in effect when he committed his firearm offense. We consider that question now.

## B.

We apply the categorical approach in three steps. First, we identify the criteria ACCA uses to define a state "serious drug offense" under 18 U.S.C. § 924(e)(2)(A)(ii). This step requires us to decide which version of the federal controlled-substances schedules that definition incorporates. Second, we turn to the "statutory definition of the state offense at issue." *Conage*, 976 F.3d at 1250. Here, that definition resides at Florida Statute § 893.13(1), which describes the elements of Jackson's prior cocaine-related offenses. Third, we compare the results of those steps to determine whether Section 893.13(1) is categorically broader—that is, whether it punishes more conduct—than ACCA's "serious drug offense" definition. If Section 893.13(1) is not categorically broader than ACCA's "serious drug offense" definition, then Jackson's prior cocaine-related offenses qualify as "serious drug offense[s]."

### i.

We break the first step into two parts. The first part explains our bottom-line conclusion: ACCA's definition of a state "serious drug offense" incorporates the version of the federal controlled-substances schedules in effect when the defendant was convicted of the prior state drug offense. The second part then addresses arguments against that conclusion.

#### 1.

We start with the three criteria ACCA uses to define a state "serious drug offense" under 18 U.S.C. § 924(e)(2)(A)(ii). First, the prior state offense must involve certain conduct: "manufacturing, distributing, or possessing with intent to manufacture or distribute." *Id.* Second, that conduct must involve "a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. [§] 802))." *Id.* And third, that conduct involving a controlled substance must be punishable by a maximum term of imprisonment of at least ten years. *Id.*

The Supreme Court has already interpreted the first and third criteria. As we've explained, *Shular* settles the meaning of the first criterion, which the Supreme Court held "requires only that the state offense involve the conduct specified in the federal statute; it does not require that the state offense match certain generic offenses." 140 S. Ct. at 782. The Supreme Court addressed the third criterion ("for which a maximum term of imprisonment of ten years or more is prescribed by law") in *McNeill*, 563 U.S. at 820–21, so it is likewise not in controversy here.

That leaves the second criterion—the offense must involve a "controlled substance." The part of the "serious drug offense" definition that deals with prior state convictions defines a "controlled substance" by reference to Section 102 of the Controlled Substances Act. *See* 18 U.S.C. § 924(e)(2)(A)(ii) (incorporating 21 U.S.C. § 802). Section 102, in turn, defines a "controlled substance" to include any substance on the federal drug schedules. *See* 21 U.S.C. § 802(6). But those schedules are not static. Indeed,

Congress has authorized the Attorney General to remove drugs from (and add drugs to) those schedules. *See supra* note 5; 21 U.S.C. § 811 (authorizing the Attorney General to add substances to, subtract them from, or transfer them between the controlled-substances schedules). So we must decide whether ACCA's definition of a "serious drug offense" under state law incorporates the version of the federal drug schedules in effect when Jackson was convicted of his prior state drug offenses or the version in effect when Jackson committed his firearm offense.

We conclude that the Supreme Court's reasoning in *McNeill* requires us to read ACCA's definition of a "serious drug offense" under state law to incorporate the version of the federal controlled-substances schedules in effect when Jackson was convicted of his prior state drug offenses.

In *McNeill*, as we've mentioned, the Supreme Court construed ACCA's third criterion for qualifying prior state drug offenses: the requirement that the state law prescribe "a maximum term of imprisonment of ten years or more" as a punishment for that drug offense. 563 U.S. at 820 (quoting 18 U.S.C. § 924(e)(2)(A)(ii)). Similar to the question here, in *McNeill* the Supreme Court considered whether, when a federal court assesses the maximum penalty under the state statute of prior conviction, ACCA requires the court to consider the penalties that applied under the state law at the time of the prior conviction or the ones that applied at the time of the sentencing on the firearm offense. *See id.* The Supreme Court concluded that "[t]he plain text of ACCA

requires a federal sentencing court to consult the maximum sentence applicable to a defendant's previous drug offense at the time of his conviction for that offense." *Id.*

To explain why the text is plain, the Supreme Court emphasized the term "'previous convictions,'" which ACCA uses in 18 U.S.C. § 924(e)(1). *See id.* at 819 (quoting § 924(e)(1)). As a reminder, Section 924(e)(1) imposes a fifteen-year mandatory minimum prison sentence when a defendant possesses a firearm in violation of 18 U.S.C. § 922(g) while having at least "three *previous convictions*" for a "serious drug offense" or a "violent felony." *Id.* § 924(e)(1) (emphasis added). The Supreme Court explained that the term "previous convictions" necessarily calls for a "backward-looking" inquiry and shows that "ACCA is concerned with convictions that have already occurred." *McNeill*, 563 U.S. at 819–20 (quotation marks omitted). So, the Court continued, the "only way" to determine whether a prior state conviction qualifies as a "serious drug offense" is "to consult the law that applied at the time of that conviction." *Id.* For that reason, the Court concluded, "the maximum sentence that 'is prescribed by law' for [a previous state conviction] must also be determined according to the law applicable at that time." *Id.* And as a result, changes in state law after a previous conviction occurs cannot "erase" that "earlier conviction for ACCA purposes." *Id.* at 823.

To be sure, *McNeill* addresses only the third criterion for ACCA's "serious drug offense" definition—that is, the criterion concerning the penalty imposed under state law. And in addressing

that criterion, *McNeill* holds only that (assuming the state crime involved the manufacture, distribution, or possession with intent to manufacture or distribute a qualifying controlled substance) a prior state conviction qualifies as an ACCA predicate if at the time of that conviction the state law authorized a maximum penalty of at least ten years. *See id.* at 817–18.

*McNeill* does not address the second criterion, which requires that the prior offense involve a federally controlled substance. So *McNeill* does not expressly determine the answer to the question we address today. *See United States v. Brown*, 47 F.4th 147, 154–55 (3d Cir. 2022); *United States v. Hope*, 28 F.4th 487, 504–05 (4th Cir. 2022); *United States v. Perez*, 46 F.4th 691, 699–700 (8th Cir. 2022); *United States v. Williams*, 48 F.4th 1125, 1142–43 (10th Cir. 2022).[7]

---

[7] The First, Second, Sixth, and Ninth Circuits have addressed a similar question arising under the Sentencing Guidelines. *See United States v. Abdulaziz*, 998 F.3d 519, 521–22, 525–27 (1st Cir. 2021); *United States v. Bautista*, 989 F.3d 698, 701, 703 (9th Cir. 2021); *United States v. Clark*, 46 F.4th 404, 406 (6th Cir. 2022); *United States v. Gibson*, ___ F.4th ____, No. 20-3049, 2022 WL 17419595, at *1, 6–7 (2d Cir. Dec. 6, 2022). But "longstanding principles of statutory interpretation allow different results under the Guidelines as opposed to under the ACCA." *Brown*, 47 F.4th at 154. The Guidelines provide, for example, that "court[s] shall use the Guidelines Manual in effect on the date that the defendant is sentenced." U.S.S.G. § 1B1.11(a). So while we express no opinion about the correctness of the First, Second, Sixth, and Ninth Circuits' opinions in *Abdulaziz*, *Bautista*, *Clark*, and *Gibson*, we conclude that reliance on them here would be "misplaced." *Brown*, 47 F.4th at 154.

But in our view, upon close consideration, *McNeill*'s reasoning requires us to conclude all the same that the federal controlled-substances schedules in effect at the time of the previous state conviction govern. That is so (1) because using the federal controlled-substances schedules in effect at the time the defendant committed the federal firearm offense would "erase an earlier [state] conviction for ACCA purposes," in violation of *McNeill*'s reasoning, *see McNeill*, 563 U.S. at 823, and (2) because of the way *McNeill* informs our reading of ACCA's structure.

To explain why, we begin with a 10,000-foot overview of ACCA's structure as it relates to the term "previous convictions" in Section 924(e)(1). Again, Section 924(e)(1) applies a mandatory minimum sentence of fifteen years' imprisonment to a defendant who possesses a firearm in violation of 18 U.S.C. § 922(g) and who "has three previous convictions . . . for a violent felony or a serious drug offense, or both." Section 924(e)(2) then defines the terms "violent felony" and "serious drug offense." The definition of "serious drug offense" separately specifies the conditions under which prior federal drug-related convictions qualify (§ 924(e)(2)(A)(i)) and prior state drug-related convictions qualify (§ 924(e)(2)(A)(ii)). Meanwhile, the definition of "violent felony" in Section 924(e)(2)(B) applies uniformly to both prior federal convictions and prior state convictions. So as relevant here, "serious drug offense" has two definitions (that pertain separately to prior federal convictions and prior state convictions), and "violent felony" has one

definition, for a total of three ways Section 924(e)(2) defines "previous convictions" in Section 924(e)(1).

With that in mind, we move on to *McNeill*'s reasoning. As we've noted, *McNeill* broadly construes the term "previous convictions" to require a "backward-looking" inquiry. 563 U.S. at 819–20 (quotation marks omitted). Because "violent felon[ies]" and both kinds of "serious drug offense[s]" are kinds of "previous convictions" under ACCA, 18 U.S.C. § 924(e), *McNeill*'s reasoning requires us to view these definitions through a backward-looking perspective.

On this score, the Supreme Court reads ACCA's "violent felony" definition in Section 924(e)(2)(B) to incorporate the state law in effect at the time of a defendant's prior state convictions. *McNeill*, 563 U.S. at 822 (noting that the Court has "repeatedly looked to the historical statute of conviction in the context of violent felonies"). And that is so even though, as the Supreme Court noted, ACCA's definition of "violent felony" uses the present tense:

> ACCA defines "violent felony" in part as a crime that "*has* as an element the use, attempted use, or threatened use of physical force against the person of another" or "*is* burglary, arson, or extortion, *involves* use of explosives, or otherwise *involves* conduct that presents a serious potential risk of physical injury to another." § 924(e)(2)(B) (emphasis added).

> Despite Congress' use of present tense in that defini-
> tion, when determining whether a defendant was
> convicted of a "violent felony," we have turned to the
> version of state law that the defendant was actually
> convicted of violating.

*Id.* at 821. In other words, under *McNeill*, the "backward-looking"
inquiry governs ACCA's "violent felony" definition wholesale. *See
id.* at 821–22.

McNeill also reads at least part of ACCA's definition of a "se-
rious drug offense" involving a prior state conviction as incorporat-
ing that same "backward-looking" inquiry. *See id.* at 825 (holding
"that a federal sentencing court must determine whether 'an of-
fense under State law' is a 'serious drug offense' by consulting the
'maximum term of imprisonment' applicable to a defendant's pre-
vious drug offense at the time of the defendant's state conviction
for that offense" (quoting § 924(e)(2)(A)(ii))); *id.* at 820 (noting that
because "ACCA is concerned with convictions that have already
occurred," "[w]hether the prior conviction was for an offense 'in-
volving manufacturing, distributing, or possessing with intent to
manufacture or distribute, a controlled substance' can only be an-
swered by reference to the law under which the defendant was con-
victed"). "Having repeatedly looked to the historical statute of con-
viction in the context of violent felonies," the Court saw "no reason
to interpret 'serious drug offenses' in the adjacent section of the
same statute any differently" because in "both definitions,

Congress used the present tense to refer to past convictions." *Id.* at 822 (alteration adopted).

Not only is the "previous conviction" inquiry a backward-looking one, but the Supreme Court has concluded that "[i]t cannot be correct that subsequent changes in state law can erase an earlier conviction for ACCA purposes." *Id.* at 823. In this respect, the Court has reasoned that "Congress based ACCA's sentencing enhancement on prior convictions and could not have expected courts to treat those convictions as if they had simply disappeared." *Id.*

And that brings us to the first reason that we must conclude that ACCA's definition of a "serious drug offense" under state law incorporates the federal drug schedules in effect at the time of the prior state conviction. If we instead read ACCA's state "serious drug offense" definition to incorporate the federal drug schedules in effect at the time a defendant committed the firearm offense, the state drug convictions would be "erase[d]" or "disappear[]" for ACCA purposes when, as in Jackson's case, the federal schedules at the time he committed the firearm offense have omitted the substances that were federally controlled at the time of the prior state conviction. But we know from *McNeill* that that is an impermissible result.

And there's more. So we turn to our second reason why we hold that ACCA's definition of a "serious drug offense" under state law incorporates the federal drug schedules in effect at the time of the prior state conviction: what *McNeill*'s reasoning tells us about

how to construe federal law relating to a prior federal drug offense when assessing whether that prior federal drug conviction qualifies as a "previous conviction[]" for ACCA purposes. ACCA defines prior federal "serious drug offense[s]" to include, for example, "an offense under the Controlled Substances Act . . . for which a maximum term of imprisonment of ten years or more is prescribed by law."[8]  18 U.S.C. § 924(e)(2)(A)(i).

Under *McNeill*'s reasoning requiring a "backward-looking" inquiry, we must read the definition of a prior federal "serious drug offense" as incorporating the version of the Controlled Substances Act (and thus the federal controlled-substances schedules) in effect at the time the defendant's prior federal drug conviction occurred. After all, *McNeill* supports a conclusion that the elements of and penalties for an offense underlying a previous conviction are set— that is, immutable—at the time of that conviction. *See* 563 U.S. at 820 (noting that in "assessing" a previous offense, the Court "consulted" the "statutes and penalties that applied at the time of" the defendant's conviction); *id.* at 821–22 (noting that "present-tense verbs" did not "persuade" the Court "to look anywhere other than the law under which" defendants "were actually convicted to determine the elements of their offenses"). And whether the drug

---

[8] Under Section 924(e)(2)(A)(i), a prior federal conviction is a "serious drug offense" if it is "an offense under the Controlled Substances Act (21 U.S.C. 801 *et seq.*), the Controlled Substances Import and Export Act (21 U.S.C. § 951 *et seq.*), or chapter 705 of title 46 for which a maximum term of imprisonment of ten years or more is prescribed by law."

involved in the prior federal drug conviction was on the federal controlled-substances schedules at the time of the prior federal drug conviction is certainly an element of an offense under the Controlled Substances Act.  So we must read "Controlled Substances Act" to refer to the version of the Act (along with the version of its attendant federal drug schedules) in effect at the time of the prior federal drug conviction.

Because we must construe the definition of a federal "serious drug offense" to incorporate the Controlled Substances Act (and the federal drug schedules it mandates) in existence at the time of the prior federal drug conviction, we cannot simultaneously construe the federal "serious drug offense" definition's single use of that term—Controlled Substances Act—to incorporate the federal drug schedules in effect at the time the defendant committed the federal firearm offense.  See, e.g., United States v. Bryant, 996 F.3d 1243, 1258 (11th Cir.) ("[W]e presume that the same words will be interpreted the same way in the same statute."), cert. denied, 142 S. Ct. 583 (2021).

Reading the term "Controlled Substances Act" in the definition of a federal "serious drug offense" to refer to the version of the law in effect at the time of the federal firearm offense would also cause another problem under McNeill.  If the drug involved in the prior federal drug conviction no longer appeared on the federal drug schedules at the time the defendant committed the federal firearm offense, the prior federal drug conviction would be "erase[d] . . . for ACCA purposes." McNeill, 563 U.S. at 823.  But

as we've noted, *McNeill* prohibits that result. *See id.* (noting that result "cannot be correct"). So under *McNeill*, the only way to assess whether a prior federal drug conviction is a "serious drug offense" is to apply the federal drug law and accompanying schedules in effect at the time of the prior federal drug conviction.

That means that if Jackson had been convicted of violating the Controlled Substances Act (rather than Florida Statute § 893.13(1)) for his cocaine-related activity in 1998 and 2004, his prior convictions would qualify as "serious drug offense[s]" under ACCA. *See* 18 U.S.C. § 924(e)(2)(A)(i). And that is so even though the federal definition of "cocaine" was broader in 1998 and in 2004 than it was in 2017, when Jackson possessed the firearm in violation of 18 U.S.C. § 922(g).

We do not think Congress would require the counting of prior federal drug convictions as "serious drug offense[s]" while at the same time not counting equivalent prior state drug convictions. But that would be the result of the construction Jackson urges.

In our view, the structure of ACCA's parallel definitions of "serious drug offense" for state and federal prior convictions logically requires the conclusion that the state-offense definition incorporates the federal drug schedules in effect at the time of the prior state drug conviction. And that we also read the definition of "violent felony" with a wholesale "backward-looking" perspective only adds support to our conclusion that ACCA's definitional structure for qualifying "previous convictions" requires us to read all the definitions with a "backward-looking" perspective. Were that not

the case, the definition of a state "serious drug offense" would be the only one of the three definitions of a "previous conviction[]" that did not employ a wholesale "backward-looking" perspective.

In sum, then, Section 924(e)'s requirements all turn on the law in effect when the defendant's prior convictions occurred. When possible, we interpret the provisions of a text harmoniously. *See* Scalia & Garner, *supra*, at 180–82; *see also Hylton v. U.S. Att'y Gen.*, 992 F.3d 1154, 1160 (11th Cir. 2021) (applying the harmonious-reading canon). To read the definition in Section 924(e)(2)(A)(ii) harmoniously with the rest of Section 924(e)'s subparts, we must read that definition to incorporate the version of the federal controlled-substances schedules in effect when Jackson's prior state convictions occurred.

2.

Some of our sister circuits and Jackson have identified two arguments for why we should construe ACCA's definition of a "serious drug offense" to incorporate the version of the federal controlled-substances schedules in effect at the time the defendant committed the federal firearm offense instead of the version in effect at the time of the prior conviction: (1) due process requires such a reading; and (2) when Congress enacted ACCA, we looked to the federal controlled-substances schedules in effect at the time of the federal firearm offense because otherwise, there would have been no federal drug schedules to compare at least some of the prior state drug convictions to, since they would have predated the

federal drug schedules. While these are thoughtful arguments, we ultimately must reject them.

First, Jackson and our sister circuits contend that reading Section 924(e)(2)(A)(ii) to incorporate the version of federal drug schedules in effect when the defendant was convicted of his prior state drug offenses raises concerns about fair notice and thus due process. *See Williams*, 48 F.4th at 1142; *Perez*, 46 F.4th at 701. But those with "previous convictions" that are federal "serious drug offenses" are charged with knowing that their federal drug convictions continue to qualify even if the controlled substances involved in their prior federal drug convictions are no longer on the federal drug schedules at the time of their federal firearms offenses. And we are aware of nothing that precludes Congress from enacting legislation that works in this manner.

As we've noted, the Supreme Court has reasoned that the "only way" to determine whether a prior state drug conviction qualifies as a "previous conviction" under ACCA is by "consult[ing] the law that applied at the time of that conviction." *McNeill*, 563 U.S. at 820 (alteration adopted). Doing so, the Supreme Court has explained, "permits a defendant to know even before he violates § 922(g) whether ACCA would apply." *Id.* at 823. That reasoning applies as much to the statutory language we consider here as it did to the language the Court addressed in *McNeill*. Put simply, the ACCA term "previous convictions" puts a defendant on notice when he is convicted of a drug offense for conduct involving a controlled substance that at that time appears on the federal drug

schedules that his conviction qualifies as a "serious drug offense" under ACCA. And in this way, a person has a means of knowing "before he violates § 922(g) whether ACCA would apply." *Id.*

We think the second argument against the incorporation of historical federal drug schedules also cannot succeed in the end. That argument goes like this: if Congress intended to incorporate the version of the federal drug schedules in effect at the time of a defendant's prior state drug offense, then convictions that predate the federal drug schedules would not qualify as ACCA predicates. Because that result would be, in Jackson's words, "odd," Congress must have intended to incorporate the version of the federal drug schedules in effect at the time the defendant committed the firearm offense.

But even if a law produces a result that "may seem odd," that oddity does not render the law "absurd." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 565 (2005). And a law "must be truly absurd before" we can disregard its plain meaning. *Silva-Hernandez v. U.S. Bureau of Citizenship & Immigr. Servs.*, 701 F.3d 356, 363 (11th Cir. 2012) (quotation marks omitted). We cannot say that is the case here. *Cf. McNeill*, 563 U.S. at 822 ("This natural reading of ACCA [to require consulting the law that applied at the time of the prior state conviction] also avoids the absurd results that would follow from consulting current state law to define a previous offense."). So we must follow what the Supreme Court has found is the plain meaning of ACCA's text. And that plain meaning, as we've noted, requires that we apply a backward-

looking perspective to the entirety of the "serious drug offense" definition.

In short, we hold that Section 924(e)(2)(A)(ii) incorporates the version of the federal drug schedules in effect when a defendant was convicted of his prior state drug offenses. When Jackson was convicted of his state cocaine-related offenses in 1998 and 2004, the federal schedules included ioflupane as a controlled substance. *See supra* note 3. So at step one of our categorical analysis, we conclude that ACCA's "serious drug offense" definition encompasses a prior state offense that involved "manufacturing, distributing, or possessing with intent to manufacture or distribute" ioflupane, "for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii).

*ii.*

That brings us to steps two and three. At step two, we look at the "statutory definition of the state offense at issue." *Conage*, 976 F.3d at 1250. "All that counts" at this step "are 'the elements of the statute of conviction.'" *Mathis*, 579 U.S. at 509 (quoting *Taylor v. United States*, 495 U.S. 575, 601 (1990)). To find those elements, we consider "the version of state law that the defendant was actually convicted of violating." *McNeill*, 563 U.S. at 821. Then, at step three, we compare the elements of the state offense to ACCA's "serious drug offense" definition to determine whether the state offense is categorically broader than ACCA's "serious drug offense" definition.

Jackson argues that Florida Statute § 893.13(1), the statute he was convicted of violating in 1998 and 2004, is categorically overbroad because in 1998 and 2004, Section 893.13(1) encompassed conduct involving ioflupane while the definition of "serious drug offense" did not.[9]  But as we have explained, the federal drug schedules included ioflupane in 1998 and 2004, when Jackson was convicted of his prior state drug offenses.  And *McNeill*'s reasoning requires us to conclude that the 1998 and 2004 versions of the federal drug schedules are what govern.  So Section 893.13(1) did not reach more conduct with respect to cocaine than does ACCA's "serious drug offense" definition as it relates to Jackson's 1998 and 2004 prior state drug convictions.

---

[9] Jackson asks us to find that ioflupane and cocaine are alternative means of satisfying the same element.  In other words, he asks us to find that Section 893.13(1) is indivisible for each form of a given drug.  When a statute lists alternative means of satisfying the same element (unlike when a statute lists alternative elements), the standard categorical approach applies, meaning that "ACCA disregards the means by which the defendant committed his crime, and looks only to that offense's elements." *Mathis*, 579 U.S. at 517; *see also supra* note 2.  As a result, we must assume those offenses involved the least culpable conduct—here, conduct involving ioflupane rather than cocaine.  But because we hold that ACCA's "serious drug offense" definition incorporates the version of the federal drug schedules in effect when Jackson was convicted of his prior state drug offenses, and because that version of the federal schedules listed ioflupane, it makes no difference whether Jackson's convictions involved ioflupane or cocaine.  We therefore assume without deciding that Section 893.13(1) is divisible for each form of a given drug, meaning we also assume that Jackson's prior state drug convictions could have been for conduct involving ioflupane.

Jackson has suggested no other reason why Section 893.13(1) might be categorically broader than ACCA's definition for a "serious drug offense."  We therefore conclude that Jackson's 1998 and 2004 Section 893.13(1) cocaine convictions qualify as "serious drug offense[s]" under 18 U.S.C. § 924(e)(1).

## IV.

For these reasons, we affirm the district court's judgment.

**AFFIRMED.**

21-13963          ROSENBAUM, J., Concurring          1

ROSENBAUM, Circuit Judge, concurring:

The statutory language we interpret here is yet another example of how ACCA produces "statutory questions" that "end up clogging the federal court dockets," Rachel E. Barkow, *Categorical Mistakes: The Flawed Framework of the Armed Career Criminal Act and Mandatory Minimum Sentencing*, 133 HARV. L. REV. 200, 206 (2019). Even "judges struggle" to resolve those questions. *Id.* Indeed, today's decision tallies the score at one circuit that concludes that we look to the federal controlled-substances schedules in effect at the time of the prior state conviction and four that reach the opposite conclusion and instead look to the federal controlled-substances schedules in effect at the time of the federal firearm offense. *See United States v. Brown*, 47 F.4th 147, 154–55 (3d Cir. 2022); *United States v. Hope*, 28 F.4th 487, 504–05 (4th Cir. 2022); *United States v. Perez*, 46 F.4th 691, 699–700 (8th Cir. 2022); *United States v. Williams*, 48 F.4th 1125, 1142–43 (10th Cir. 2022). And it's even more confusing than that, as we previously agreed with those four circuits. *United States v. Jackson*, 36 F.4th 1294, 1299–1301 (11th Cir. 2022) ("*Jackson I*"), *vacated*, 2022 WL 4959314 (11th Cir. 2022).

Due process requires that criminal laws notify "ordinary people" not only about the lawfulness of their conduct, but also about the penalties for engaging in conduct that is unlawful. *Johnson v. United States*, 576 U.S. 591, 595–96 (2015). An ordinary citizen seeking notice about whether her prior offenses qualify as ACCA predicates must, in line with today's decision, research the

historical versions of controlled-substances list.  And that's a heavy lift for the ordinary citizen.

That said, and as the panel opinion explains, the Supreme Court has said that the term "previous convictions" evidences congressional intent to read the definitions for "violent felony" and "serious drug offense" with an eye to what the law was at the time of the "previous conviction[]," so we can't say that the statute doesn't provide fair notice of what prior convictions qualify as predicate offenses under ACCA. *See* Maj. Op. at 16–17, 20–22 (citing *McNeill v. United States*, 563 U.S. 816 (2011)).

Still, it is quite remarkable to expect the "ordinary citizen," seeking "to conform his or her conduct to the law," *City of Chicago v. Morales*, 527 U.S. 41, 58 (1999), to understand the ins and outs of ACCA—especially when, as today's decision demands, they require historical research of the federal controlled-substance schedules. *Cf. Williams*, 48 F.4th at 1142. Adding to the extraordinary nature of what we find ACCA requires is the fact that ACCA may be unique in requiring application of historical federal law in this way, as opposed to the federal law in place at the time of the federal violation.[1]

---

[1] The immigration context fails to supply a helpful analogue here. To be sure, we have looked to the federal drug schedules in effect at the time of a prior conviction to determine whether that conviction renders a non-citizen removable. *See, e.g.*, *Gordon v. U.S. Att'y Gen.*, 962 F.3d 1344, 1351 n.4 (11th Cir. 2020). But in the immigration context, a prior conviction immediately triggers

21-13963            ROSENBAUM, J., Concurring            3

For the reasons we explain in the panel opinion, the law mandates an affirmance in this case. But I am deeply concerned that our reading seemingly requires the "ordinary person" to be an expert in ACCA and in historical knowledge of the federal drug schedules. Incorporating the federal drug schedules in effect at the time of the federal firearm offense (and for prior federal convictions, at both the times of the prior conviction and the federal firearm offense) would be far more consistent with how we generally construe statutes. It would also provide the "ordinary person" with more accessible and realistic notice. And finally, as our sister circuits have observed, incorporating the federal drug schedules in effect at the time of the federal firearm offense would be far more consistent with Congress's determination to decriminalize certain substances. *See Williams*, 48 F.4th at 1144 ("[I]f Congress has decided hemp should not be criminalized, then surely Congress would not intend for it to continue to be included within the narrow class of serious crimes that contributes to a 15-year mandatory minimum prison sentence."); *see also Perez*, 46 F.4th at 700.

---

removal consequences. In contrast, a prior state conviction carries no federal consequences under § 924(e) unless and until the person with that conviction is convicted of carrying a firearm in violation of § 922(g)(1). For that reason, "it makes sense" in the immigration context, unlike in the ACCA context, "to determine whether the conviction is a removable offense *at the time of that controlled-substance conviction.*" *Williams*, 48 F.4th at 1143; *see also Brown*, 47 F.4th at 155; *Perez*, 46 F.4th at 700.

4                    ROSENBAUM, J., Concurring                    21-13963

For these reasons, if Congress continues to retain ACCA, I respectfully urge Congress to consider amending the statute to incorporate the version of the controlled-substances list in effect when the defendant commits his federal firearm offense.