[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-10733

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DONALD CONELIOUS VOLTZ,

Defendant- Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 4:21-cr-00011-CLM-JHE-1

_____

Before JILL PRYOR, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Donald Conelious Voltz was convicted of possessing a firearm as a felon and sentenced to 180 months' imprisonment followed by 60 months of supervised release.  Voltz now appeals that sentence.  First, Voltz argues that the district court erred in finding that his 2001 Alabama marijuana conviction was a "serious drug offense" under the Armed Career Criminal Act ("ACCA"), and thus erred in applying an ACCA enhancement to his sentence.  Second, Voltz contends that the district court erred in finding that his 2001 Alabama marijuana conviction was a "controlled substance offense" under U.S.S.G. §§ 2K2.1, 4B1.2, and thus erred in calculating his base offense level.  Finally, Voltz says the district court committed reversible constitutional error in determining, via judicial fact-finding at sentencing, that he had three prior ACCA predicate convictions for violent felonies or serious drug offenses committed on different occasions.  After careful review, we affirm.

**I.**

"We review de novo whether a conviction qualifies as a serious drug offense under the ACCA."  *United States v. White*, 837 F.3d 1225, 1228 (11th Cir. 2016).

The ACCA imposes a mandatory minimum sentence of 15 years for defendants who violate 18 U.S.C. § 922(g) after having been convicted of three prior violent felonies or "serious drug offense," committed on different occasions.  18 U.S.C. § 924(e)(1).

22-10733                Opinion of the Court                3

The ACCA defines a "serious drug offense," in relevant part, as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. [§] 802)), for which a maximum term of ten years or more is prescribed by law." *Id.* § 924(e)(2)(A)(ii). Section 102 of the CSA, in turn, defines a "controlled substance" as "a drug or other substance, or immediate precursor, included in [the federal drug schedules]." 21 U.S.C. § 802(6).

The Sentencing Guidelines provide that "[a] defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal." U.S.S.G. § 4B1.4(a). Section 4B1.4(b) provides enhanced offense levels for such defendants. *See id.* § 4B1.4(b).

In determining whether a prior state conviction counts as a "serious drug offense" under the ACCA, we apply the "categorical approach." *United States v. Jackson*, 55 F.4th 846, 850 (11th Cir. 2022), *aff'd sub nom. Brown v. United States*, 602 U.S. 101 (2024). "Under this approach, a state conviction cannot serve as an ACCA predicate offense if the state law under which the conviction occurred is categorically broader—that is, if it punishes more conduct—than [the] ACCA's definition of a 'serious drug offense.'" *Id.* In *Jackson*, we held that the "ACCA's definition of a 'serious drug offense' under state law . . . incorporate[s] the version of the federal controlled-substances schedules in effect when [the defendant] was convicted of his prior state drug offenses." *Id.* at 855; *see id.* at 859.

The Supreme Court affirmed our reading of the ACCA in *Jackson*, holding that "a state drug conviction counts as an ACCA predicate if it involved a drug on the federal schedules at the time of that offense." *Brown*, 602 U.S. at 123.

At the time of Voltz's 2001 Alabama marijuana conviction, the CSA regulated "all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin." 21 U.S.C. § 802(16) (2001). The CSA included no exemption for hemp. *See id.* The Alabama law that governed Voltz's 2001 conviction incorporated a definition of "marihuana" that matched the 2001 CSA's definition of "marihuana" nearly verbatim and did not include an exemption for hemp. *See* Ala. Code §§ 13A-12-213, 20-2-2(15) (2001).

Here, as Voltz concedes, his argument is foreclosed by the Supreme Court's decision in *Brown* and our decision in *Jackson*. Because the Alabama law that governed Voltz's 2001 conviction incorporated a definition of "marihuana" that categorically matched the 2001 CSA's definition of "marihuana," and because neither statute contained an exemption for hemp, the district court did not err in finding that Voltz's 2001 Alabama marijuana conviction was a "serious drug offense" under the ACCA.

## II.

We review *de novo* a district court's interpretation of the term "controlled substance offense" under the Sentencing

22-10733                Opinion of the Court                5

Guidelines. *United States v. Bishop*, 940 F.3d 1242, 1253 (11th Cir. 2019). Under the prior-panel-precedent rule, we are bound to adhere to a prior panel's holding "unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*." *In re Lambrix*, 776 F.3d 789, 794 (11th Cir. 2015) (quotation marks omitted). Additionally, a calculation error under the Sentencing Guidelines is harmless where the error does "not affect [the] advisory guidelines range or sentence." *United States v. Brown*, 805 F.3d 1325, 1328 (11th Cir. 2018).

Under U.S.S.G. § 2K2.1(a)(2), a defendant convicted of unlawful possession of firearms or ammunition receives a base offense level of 24 if he "committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." The commentary to U.S.S.G. § 2K2.1 states that "controlled substance offense" has the meaning set forth in U.S.S.G. § 4B1.2(b) and Application Note 1 of the Commentary to § 4B1.2. U.S.S.G. § 2K2.1, comment. (n.1). Section 4B1.2(b), in turn, defines "controlled substance offense" as follows:

> [A]n offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b) (2018).

In determining whether a state conviction counts as a "controlled substance offense" under U.S.S.G. §§ 2K2.1(a)(4)(A), 4B1.2(b), we apply the categorical approach. *United States v. Dubois*, 94 F.4th 1284, 1295 (11th Cir. 2024). Under the categorical approach, we compare the definition of "controlled substance offense" under the Sentencing Guidelines with the state statute of conviction. *Id.* "Unless the least culpable conduct prohibited under the state law qualifies as a predicate controlled substance offense, the defendant's state conviction cannot be the basis of an enhancement under the guidelines, regardless of the actual conduct underlying the conviction." *Id.* (cleaned up).

Under *Dubois*, a "'controlled substance' under section 4B2.1(b)'s definition of 'controlled substance offense' is, for prior state offenses, a drug regulated by state law *at the time of the conviction*, even if it is not federally regulated, and even if it is no longer regulated by the state at the time of federal sentencing." *Id.* at 1300 (emphasis added).

At the time of Voltz's 2001 Alabama marijuana conviction, Alabama law defined "marihuana" as "[a]ll parts of the plant Cannabis sativa L., whether growing or not, the seeds thereof, the resin extracted from any part of the plant and every compound, manufacture, salt, derivative, mixture or preparation of the plant, its seeds or resin." Ala. Code § 20-2-2(15) (2001). Alabama law did not contain any exemptions for hemp. *Id.*

Here, as an initial matter, because Voltz would have received the ACCA's statutory minimum sentence of 180 months' imprisonment regardless of whether he had two prior controlled substance offenses, any error the district court made in finding that Voltz had two prior controlled substance offenses would ultimately be harmless. *See Brown*, 805 F.3d at 1328. In any event, Voltz's hemp-overbreadth argument is foreclosed by intervening precedent in *Dubois*. At the time of Voltz's 2001 conviction, Alabama law regulated all parts of the cannabis plant, including hemp. Thus, the district court did not err in finding that Voltz's 2001 conviction was a "controlled substance offense."

## III.

Unless a constitutional error amounts to a "structural error," we review preserved constitutional errors using a harmless error standard. *United States v. Roy*, 855 F.3d 1133, 1142 (11th Cir. 2017).

We only consider a preserved constitutional error to be "structural" in the rare case that the error involves "a structural defect affecting the framework within the trial proceeds, rather than simply an error in the trial process itself." *United States v. Nealy*, 232 F.3d 825, 829 n.4 (11th Cir. 2000) (quotation marks omitted). Structural error "affect[s] the entire conduct of the [proceeding] from beginning to end" and is a "highly exceptional" category of constitutional error subject to automatic reversal on appeal. *Greer v. United States*, 593 U.S. 503, 513 (2021) (quotation marks omitted). Examples of these "rare instances" include "extreme deprivations of constitutional rights, such as denial of counsel, denial of self

representation at trial, and denial of a public trial." *Nealy*, 232 F.3d at 829 n.4.

"[D]iscrete defects in the criminal process," on the other hand, "such as the omission of a single element from jury instructions . . . are not structural because they do not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Greer*, 593 U.S. at 513 (quotation marks and emphasis omitted). These "discrete defects," *id.*, include district court errors that "infringe upon the jury's factfinding role," *Neder v. United States*, 527 U.S. 1, 18 (1999). For example, a "[f]ailure to submit a sentencing factor to the jury . . . is not structural error," and is instead subject to harmless error review. *Washington v. Recuenco*, 548 U.S. 212, 221–22 (2006). So too for the "failure to submit the issue of drug quantity to the jury." *Nealy*, 232 F.3d at 829. We will not reverse a sentence for such errors if "the record does not contain evidence that could rationally lead [a jury] to a contrary finding." *Id.* at 830. If, however, the defendant has "raised evidence sufficient to support a contrary finding," then the error is not harmless. *Neder*, 527 U.S. at 19.

In *Apprendi v. New Jersey*, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury[] and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000). In *Nealy*, we held that *Apprendi* errors are not structural, and are instead subject to harmless error review. 232 F.3d at 829.

In *Erlinger v. United States*, the Supreme Court held that judicial factfinding by a preponderance of evidence that a defendant has three ACCA predicate convictions committed on different occasions violates the Fifth Amendment's guarantee of due process of law and the Sixth Amendment's guarantee to a jury trial. 144 S. Ct. 1840, 1851–52 (2024). The Court held that this finding must be either made by a jury beyond a reasonable doubt or freely admitted by the defendant in a guilty plea. *See id.* In explaining its reasoning, the Court noted that its decision was "on all fours with *Apprendi* . . . as any we might imagine." *Id.* at 1852. The Court emphasized that the ACCA's different-occasions inquiry can be "intensely factual" and noted that while judges may use *Shepard* documents—that is, documents like "judicial records, plea agreements, and colloquies between a judge and the defendant"—for the limited function of "determining the fact of a prior conviction and the then-existing elements of that offense," judges may not use *Shepard* documents to determine whether the "past offenses differed enough in time, location, character, and purpose to have transpired on different occasions." *Id.* at 1847, 1854–55; *see also Shepard v. United States*, 544 U.S. 13, 21–21, 26 (2005). The Court explained that "no particular lapse of time or distance between offenses automatically separates a single occasion from distinct ones." *Erlinger*, 144 S. Ct. at 1855. The Court also noted that "in many cases the occasions inquiry will be 'straightforward,'" such as when "a defendant's past offenses [are] different enough and separated by enough time and space," though the Court stressed that this finding must still be made by a jury rather than a judge. *Id.* at 1856.

In *Wooden v. United States*, the Supreme Court described the factors that juries must consider under the ACCA's different-occasions inquiry. 595 U.S. 360, 369 (2022). The Court explained that while "offenses committed close in time, in an uninterrupted course of conduct, will often count as part of one occasion," this is not so for "offenses separated by substantial gaps in time or significant intervening events." *Id.* The Court further stressed that "[p]roximity of location is also important; the further away crimes take place, the less likely they are components of the same criminal event." *Id.* The Court also noted that "the character and relationship of the offenses may make a difference: [t]he more similar or intertwined the conduct giving rise to the offenses—the more, for example, they share a common scheme or purpose—the more apt they are to compose one occasion." *Id.*

Here, Voltz is correct that the district court erred in determining, via judicial factfinding, that Voltz had three ACCA predicate convictions committed on different occasions. Under *Erlinger*, this was a question of fact that needed to be sent to a jury (or that Voltz needed to freely admit in his guilty plea). *See* 144 S. Ct. at 1851–52. The district court, therefore, erred in determining by a preponderance of the evidence, and by judicial factfinding, that Voltz's qualifying ACCA offenses were "separate and distinct." And Voltz properly preserved this constitutional error.

The district court's *Erlinger* error was not structural, however, because it did not affect the entire proceeding or render the criminal process fundamentally unfair. *See Greer*, 593 U.S. at 513.

Instead, it was a "discrete defect[] in the criminal process" analogous to the omission of a single element from a jury instruction and is therefore subject to harmless error review. *See Greer*, 593 U.S. at 513 (quotation marks omitted). What's more, the Supreme Court in *Erlinger* stated that its opinion was "on all fours with *Apprendi* . . . as any we might imagine," 144 S. Ct. at 1852, and we review *Apprendi* errors under a harmless error standard, *see Nealy*, 232 F.3d at 829. *See also Erlinger*, 144 S. Ct. at 1860 (Roberts, C.J., concurring) ("[A]s Justice Kavanaugh explains, violations of [the right to have a jury determine whether predicate offenses were committed on different occasions] are subject to harmless error review."); *id.* at 1866–67 (Kavanaugh, J., dissenting) (explaining that the Supreme Court "has long ruled that most constitutional errors, including Sixth Amendment errors, can be harmless" and applying the harmless error standard to Erlinger's facts (internal quotation omitted)). We are, in short, persuaded that the harmless error standard applies to an *Erlinger* error.

Here, we conclude that the district court's *Erlinger* error was harmless because none of the evidence in the record could rationally support a finding that Voltz's ACCA predicate offenses were *not* committed on different occasions. *See Nealy*, 232 F.3d at 830. Voltz has never contested that his three ACCA predicate offenses were separated by years; no evidence in the record indicates that the offenses shared a common scheme or purpose; and the district court's reliance on *Shepard* documents—though *Erlinger* cautions against it—did not affect the harmlessness of the error itself given the lack of record support for a contrary finding. Thus, the district

court committed harmless error in determining, via judicial fact-finding at sentencing, that Voltz committed three predicate ACCA offenses on different occasions.

**AFFIRMED.**