[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-12686
_____

D.C. Docket No. 9:18-cr-80217-RLR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

XAVIER LEVAR SMITH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 21, 2020)

Before WILLIAM PRYOR, Chief Judge, HULL and MARCUS, Circuit Judges.

HULL, Circuit Judge:

After pleading guilty, Xavier Smith appeals his conviction and sentence for

being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and

924(e).  On appeal, Smith argues that the district court erred: (1) in denying his motion to dismiss his indictment based on his prior counsel's alleged ineffective assistance; and (2) in concluding his prior Florida felony convictions for sale of cocaine qualified as serious drug offenses under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).  After review, we affirm Smith's § 922(g) firearm conviction and sentence.

## I.  BACKGROUND FACTS

Smith's firearm conviction at issue was initially the subject of state proceedings recounted below.

## A.    State Court Charges and Plea Negotiations

In June 2018, members of the Palm Beach County Sheriff's Office and agents with the Drug Enforcement Administration executed a search warrant at defendant Smith's apartment, where they found drugs, drug paraphernalia, and a semi-automatic handgun that was reported stolen.  Video and audio recordings and DNA evidence linked Smith to the gun.

Initially, the State of Florida charged Smith with multiple drug-related offenses and being a felon in possession of a firearm, in violation of Fla. Stat. § 790.23(1)(a), (c), (e), and (3).  The state prosecutor, John Parnofiello, served in a dual role as a Special Assistant United States Attorney, and a state public defender represented Smith.

2

The state offered Smith a plea deal for a three-year prison sentence, which Smith rejected.  Afterwards, two state charges were dropped because of negative lab results.  Then, in an October 1, 2018 email, Parnofiello (1) offered a plea deal of a five-year prison sentence, (2) described Smith's offense conduct and the state's evidence, and (3) listed Smith's three prior Florida felony convictions for sale of cocaine.  Although Smith's case was "currently filed with the State," Parnofiello advised Smith's counsel that the three cocaine convictions were controlled substance offenses under the federal Sentencing Guidelines and would increase Smith's base offense level under U.S.S.G. § 2K2.1.  Parnofiello calculated Smith's federal advisory guidelines range as 92 to 115 months' imprisonment "if Mr. Smith was ONLY being charged with felon in possession of a firearm at the federal level" and "if [Smith] were to plea immediately after indictment . . . ."

In an October 15, 2018 email to Smith's counsel, prosecutor Parnofiello stated that "[u]pon further review," he had determined that Smith "qualifie[d] as an Armed Career Criminal . . . subjecting him to a **15 year federal minimum mandatory sentence**."  Parnofiello repeated the October 1 offer stating, "My offer to resolve the case without taking the case federally is **a 5 year DOC [state] sentence**."  Parnofiello warned that the plea offer expired at the close of business, and he was "in the process of preparing the federal indictment information."  At counsel's request, Parnofiello agreed to a one-week extension.

3

That same day, Smith's counsel visited Smith at the jail and gave

Parnofiello's emails to Smith to read.  Smith rejected the five-year plea deal.

## B.    Federal Charge and Motion to Dismiss

On November 13, 2018, a federal grand jury charged Smith with being a

felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and

924(e).[1]  The federal court appointed new counsel for Smith.  Smith's federal

counsel moved to dismiss the indictment, contending Smith's state counsel, Perry

Thurston, rendered ineffective assistance during the state plea negotiations.  Smith

admitted that Thurston showed him Parnofiello's emails containing the state's five-

year plea offer.  Smith claimed, however, that Thurston was unable to advise Smith

"about the federal sentencing guidelines," whether "a plea to state charges

completely prevent[ed] a federal indictment for the same set of facts," or if Smith

was "truly an armed career criminal facing a mandatory minimum of 15 years

imprisonment under federal law if indicted in federal court."  Smith argued that

Thurston's ineffective assistance required the district court to either dismiss the

federal indictment or compel the federal government to make the original plea

offer, after Smith had competent counsel, who practiced federal criminal law, to

advise him.

---

[1] Shortly thereafter, the state charges were dismissed.

Opposing Smith's motion, the government argued, among other things that: (1) Smith's Sixth Amendment right to counsel for his federal offense had not attached during his state plea negotiations; and alternatively (2) Smith could not establish ineffective counsel because Thurston's performance was objectively reasonable, and Smith could not show prejudice.

## C.    Evidentiary Hearing

A magistrate judge held an evidentiary hearing.  Thurston testified about his plea negotiations with prosecutor Parnofiello and his discussions with Smith. Parnofiello told Thurston, "[W]e are looking at indicting [Smith] [f]ederally.  If he takes the five years we won't do that."  In turn, Thurston "expressed that to Mr. Smith specifically."  He and Smith had "lots of discussions" about the plea offer and the possibility of a federal indictment, but Smith "did not think that would happen" and never wanted to consider the five-year offer.

Thurston also asked Parnofiello to advise what Smith "would be looking at" if Smith rejected the five-year plea and was indicted in federal court.  Thurston wanted to give Smith the potential alternatives, even though Smith did not want them and already had given him "strict instruction to prepare for trial."  In response, Parnofiello sent the two October 1 and 15 emails.

Thurston then met with Smith at the jail and gave him physical copies of both emails.  Thurston told Smith that the five-year offer was still pending and that

5

the emails were the prosecutor's indication of what Smith faced if he were indicted in federal court. Thurston tried to discuss the contents of the emails with Smith, telling Smith, "I know you don't want it, but I want you to have this because these are [the] potential consequences if the [g]overnment goes ahead and files the [f]ederal charges against you." Smith, however "was not interested in any of those emails" and told Thurston "unequivocal[lly] that he was not going to take any plea offer."

Thurston believed it was "more than likely" that Smith's case "would be taken [f]ederally" if Smith did not accept the state plea offer. Smith, however, told Thurston that: (1) Parnofiello "was bluffing"; (2) "I am not going to be [federally] indicted"; (3) "they had nothing on him"; (4) he did not want to talk about any plea offer; and (5) if Thurston presented plea offers, then Thurston was working for the state instead of "preparing his case to go to trial." Smith asked Thurston if he still wanted to represent Smith because Smith wanted his case prepared for trial. Smith never indicated to Thurston that he would accept the state's plea offer. Smith never asked him to negotiate a more favorable plea agreement.

Thurston testified that he was a thirty-year member of the Florida bar with no disciplinary history. While in private practice, he had represented criminal defendants in federal court, most recently in 2011, and he was familiar with the ACCA and the federal Sentencing Guidelines. He admitted that he did not

6

currently practice federal law, but he would have consulted friends who were federal public defenders if Smith had asked any questions about the contents of Parnofiello's emails.  Thurston did not independently verify Parnofiello's guidelines calculations or Smith's prior convictions and status as an armed career criminal.  Thurston did not do so because Smith was adamant that he would not accept any plea offer and wanted to go to trial.

Thurston denied that Smith expressed concern that he could still be indicted in federal court even if he took the state plea offer.  Rather, "[f]rom the beginning," Thurston had discussed with Smith "that [they] want[ed] to take the offer so that there will not be any [f]ederal charges filed."  There was no doubt in Thurston's mind that Smith understood there would be no federal charge if he took the state plea.  Thurston also explained to Smith that if federal charges were filed, Smith would not have a trial in state court.

After Thurston's testimony, the government submitted audio recordings of Smith's phone calls from jail to his girlfriend.  In a November 2, 2018 call, Smith said, "I'm going to trial; I'm taking it to trial, dog.  Like at the least, I'm trying to get all my charges dropped but, in reality, man, I might be facing, you know what I'm saying some serious time.  Hopefully, I ain't gon' take . . . no serious time, like, but they talking like three to five years."  Smith told his girlfriend, "I can beat this charge" and that he would "fight this shit."  Later in the same conversation,

7

Smith said, "If them crackers come at me and say 'Will you take six months, eight months, a year in the county?' I might have to jump on it, you feel me, I'm just letting you know." In another call a week later, Smith told his girlfriend he would "be coming home soon," and that he hoped for a "decent plea" to "a year at the most" of "county time."

## D.    Denial of Motion to Dismiss

After hearing argument from counsel, the magistrate judge issued an oral recommendation that Smith's motion to dismiss the indictment be denied. The magistrate judge declined to address the government's claim that Smith's Sixth Amendment right to counsel never attached as to the federal charge and instead denied Smith's ineffective assistance claim "on factual grounds."

After ruling that Thurston's testimony was credible, the magistrate judge found that: (1) Thurston had "handed a copy of the email to Mr. Smith, [plus] they had multiple discussions and the plea offer was fully communicated"; (2) Smith "told [Thurston] that he believed the [g]overnment was bluffing," which was buttressed by Smith's phone conversations with his girlfriend in which he said, "he would not take a deal that would require him to do a year, let alone five years"; and (3) Smith was "told and did understand that if he rejected the plea offer, and if the [g]overnment wasn't bluffing, he would be facing 15 years in jail" and "knowing

8

that information, Mr. Smith expressed a firm desire to go to trial, not to have plea discussions, [and to] prepare for trial . . . ."

Based on these facts, the magistrate judge concluded that Thurston provided Smith with sufficient information about whether to reject the state plea offer and that Smith's decision to do so was a knowing and voluntary decision. The magistrate judge explained that Thurston's knowledge of the federal sentencing laws was not germane. Even if Thurston had fully researched the sentencing issue, he "would have known Mr. Parnofiello [was] right" and that Smith in fact was "looking at 15 years" if indicted in federal court.

Over Smith's objection, the district court adopted the magistrate judge's recommendation and denied Smith's motion to dismiss the indictment. The district court determined that the magistrate judge's fact findings and credibility determinations were supported by the record and adopted them in full. The district court found that Thurston communicated to Smith that (1) "he could plead guilty in exchange for a 5-year sentence" and (2) "if he rejected the offer, he would be federally indicted and subject to a 15-year minimum mandatory sentence." The court then found (1) Smith "was unwilling to accept the 5-year offer or engage in any plea discussions"; (2) Smith "stated that the government was bluffing and that he wanted Mr. Thurston to prepare for trial"; and (3) Smith "has not demonstrated a reasonable probability that he would have accepted the plea offer." The district

9

court concluded that even if Thurston's performance was deficient, Smith had not shown prejudice. The district court did not address the government's argument about when Smith's Sixth Amendment right to counsel attached because there was no prejudice in any event.

## E.    Plea and Sentencing

After the district court's ruling, Smith pled guilty to Count 1 pursuant to a plea agreement. In a stipulated statement of facts, Smith agreed that he had three prior felony convictions for sale of cocaine, in violation of Fla. Stat. § 893.13(1)(a)(1).

Smith's presentence investigation report ("PSI") noted that the statutory mandatory minimum term for his § 922(g)(1) firearm offense was 15 years under § 924(e)(1). The PSI calculated an adjusted offense level of 30 consisting of: a base offense level of 24 under U.S.S.G. § 2K2.1(a)(2), because Smith had three prior felony convictions for sale of cocaine; a 2-level increase under § 2K2.1(b)(4)(A), because Smith's handgun was stolen; and a 4-level increase under § 2K2.1(b)(6)(B), because he used the handgun in connection with another felony offense, namely possession of controlled substances. Because Smith was subject to the ACCA's enhanced sentence and his three sale of cocaine convictions qualified as "controlled substance offense[s]" under U.S.S.G. § 4B1.2(b), the PSI increased Smith's adjusted offense level by another 4 levels to 34 pursuant to

10

§ 4B1.4(b)(3)(A), the armed career criminal provision. After a 3-level reduction

for acceptance of responsibility, Smith's total offense level was 31. With a

criminal history category VI, Smith's advisory guidelines range was 188 to 235

months' imprisonment.

Smith objected to his ACCA classification. Smith agreed that a Florida sale

of cocaine offense was a "controlled substance offense" under U.S.S.G. § 4B1.4.

Smith, however, contended that it did not qualify as a "serious drug offense" under

the ACCA using the categorical approach, because Fla. Sta. § 893.13 contains no

mens rea element. Smith conceded that this Court's binding precedent in United

States v. Smith, 775 F.3d 1262 (11th Cir. 2014), foreclosed his ACCA-mens rea

argument but noted that the Supreme Court had granted certiorari to address the

issue in United States v. Shular, 736 F. App'x 876 (11th Cir. 2018), cert. granted,

139 S. Ct. 2773 (2019).

At sentencing, the district court overruled Smith's ACCA objection based on

Smith and adopted the PSI's guidelines calculations. The district court varied

downward from the advisory guidelines range of 188 to 235 months and imposed

§ 924(e)'s mandatory minimum 180-month sentence.

## II. STANDARD OF REVIEW

Generally, we do not review an ineffective assistance of counsel claim raised

on direct appeal. However, where, as in defendant Smith's case, the district court

11

has entertained the claim and "the record is sufficiently developed," we will do so. See United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002). We review such a claim de novo. Id. We review the district court's underlying fact findings, including its credibility findings, regarding counsel's assistance for clear error. Chateloin v. Singletary, 89 F.3d 749, 753 (11th Cir. 1996).

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. U.S. Const. amend. VI; Strickland v. Washington, 466 U.S. 668, 684-86, 104 S. Ct. 2052, 2063 (1984). A defendant's right to effective assistance of counsel applies at all critical stages of a criminal proceeding, including when the defendant enters a guilty plea. Lee v. United States, ___ U.S. ___, 137 S. Ct. 1958, 1964 (2017). The parties vigorously dispute whether Smith's Sixth Amendment right to counsel had attached during his state plea negotiations, which occurred before his federal indictment was filed. We need not address this issue. Even assuming Smith's Sixth Amendment right to counsel attached, Smith failed to establish that Thurston's representation was constitutionally ineffective.

To demonstrate ineffective assistance of counsel under Strickland, a defendant must show both that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) the defendant was prejudiced as a result. Id. At the outset, we note that Smith does not contest any of the district court's fact

12

findings or its decision to credit defense counsel Thurston's hearing testimony.  In light of these fact findings, Smith's ineffective assistance claim fails both prongs of the Strickland test.  We address performance and prejudice in turn.

## A.    Counsel's Performance

Whether counsel's performance fell below an objective standard of reasonableness is determined based on "reasonableness under prevailing professional norms."  Strickland, 466 U.S. at 688, 104 S. Ct. at 2064-65.  Counsel's performance is entitled to a presumption of reasonableness, and to overcome that presumption, a defendant must show that "no competent counsel would have taken the action that his counsel did take."  Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000).  In the context of plea negotiations, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."  Missouri v. Frye, 566 U.S. 134, 145, 132 S. Ct. 1399, 1408 (2012); see also In re Perez, 682 F.3d 930, 932 (11th Cir. 2012).

Here, Smith has not shown that Thurston's performance was deficient.  Thurston repeatedly advised Smith that he should accept the five-year state plea deal to avoid the federal indictment that prosecutor Parnofiello said he was preparing.  Thurston visited Smith at the jail and showed him the prosecutor's two emails.  Thurston informed Smith that, according to Parnofiello, Smith faced at

13

least a 15-year mandatory minimum sentence under the ACCA if Smith was indicted in federal court. Thurston further advised Smith that if he rejected the state plea offer, Thurston believed a federal indictment was likely and that it would mean there would be no trial in state court.

In response, Smith was adamant, as he had been in the past, that: (1) he was not interested in Parnofiello's five-year plea offer; (2) he, unlike his counsel, thought Parnofiello was bluffing about seeking a federal indictment; and (3) he wanted Thurston to prepare for a state trial.

The record clearly establishes that Thurston conveyed to Smith the plea offer—five years in state prison in exchange for no federal charges being filed—and advised Smith of the possible consequences if he rejected it—a federal indictment that could subject him to a 15-year mandatory minimum sentence. Although Smith contends Thurston did not provide "adequate legal counsel to make an informed decision about the plea offer," he does not identify any additional information he needed to make an informed decision.[2]

---

[2] Smith points out that Parnofiello's first, October 1 email failed to account for Smith's armed career criminal status in calculating Smith's potential advisory federal guidelines range. This "mis-information" is immaterial, however, given that Parnofiello's follow-up email on October 15 correctly advised Thurston and Smith that Smith's three Florida felony convictions for sale of cocaine qualified him as an armed career criminal under the ACCA and that Smith faced a mandatory minimum 15-year federal sentence as a result. In other words, Parnofiello's October 15 email, which Thurston gave to Smith to read, correctly advised Smith that the downside risk of rejecting the state five-year plea deal was a minimum 180-month federal sentence. Yet, knowing this, Smith rejected the plea offer.

Instead, defendant Smith merely points to the fact that Thurston, as a state public defender, was not currently practicing criminal law in federal court. Even so, this fact alone does not mean Thurston's advice to Smith fell below an objective standard of reasonableness. Indeed, Thurston's advice to take the state five-year offer to avoid a possible 15-year federal sentence was sound and reasonable. The problem for Smith is not that his counsel Thurston failed to advise him, but that Smith failed to heed that advice.

Defendant Smith's argument that Thurston failed to verify prosecutor Parnofiello's information about his federal sentencing exposure is equally unavailing. Had Smith expressed any interest at all in entertaining the state's five-year offer or in pursuing further negotiations with Parnofiello, Thurston said he would have verified Parnofiello's information about Smith's status under the ACCA. But Smith was adamant, as he had been all along, that he did not want to accept the state plea and was convinced Parnofiello was bluffing about pursuing federal charges. The record establishes that Thurston conveyed the five-year plea offer to Smith and adequately advised Smith that if he rejected the offer, the downside risk was possible federal prosecution and a mandatory minimum 15-year sentence.

Accordingly, Smith cannot show his counsel's representation with respect to the state plea offer was objectively unreasonable under Strickland.

15

**B.    Prejudice**

Smith's ineffective assistance claim also fails for lack of prejudice.  Smith alleges Thurston's ineffective assistance led him to reject the five-year plea offer, causing his 15-year sentence.  To show prejudice, Smith must show that "but for the ineffective advice of counsel there is a reasonable probability" that: (1) he "would have accepted the plea"; (2) "the prosecution would not have withdrawn it in light of intervening circumstances"; (3) "the court would have accepted its terms"; and (4) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed."  Lafler v. Cooper, 566 U.S. 156, 164, 132 S. Ct. 1376, 1385 (2012); see also Frye, 566 U.S. at 147, 132 S. Ct. at 1409; Carmichael v. United States, 966 F.3d 1250, 1259 (11th Cir. 2020).  The defendant's "own conclusory after-the-fact assertion" that he would have accepted a guilty plea, without more, is insufficient to satisfy the first prong of the prejudice test.  Rosin v. United States, 786 F.3d 873, 879 (11th Cir. 2015) (stressing that the record evidence that the defendant "had absolutely no interest in" pleading guilty contradicted his later claim that he would have done so); see also Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991).

Here, Smith did not show, under the first prong of Lafler and Frye, that but for Thurston's advice, he would have accepted the state five-year plea deal.  See

16

Lafler, 566 U.S. at 164, 132 S. Ct. at 1385; Frye, 566 U.S. at 147, 132 S. Ct. at 1409.  To the contrary, the evidence proved the opposite—that Smith was never going to accept a plea deal of five years.  Smith had no interest in the emails containing the five-year plea offer or prosecutor Parnofiello's information about the federal sentence he likely faced if he rejected the offer.  Smith thought prosecutor Parnofiello was bluffing about filing federal charges and that Parnofiello "had nothing on him."  Smith instructed Thurston to prepare for trial if Thurston was going to continue representing him.

Smith's unwillingness to accept the five-year plea offer (and even the earlier three-year plea offer) is further corroborated by his jail phone calls with his girlfriend.  In these calls, Smith said he would not take the "three to five years" the state prosecutor was offering and that he was "taking it to trial."  Smith told his girlfriend he thought he could "beat this charge," and he was "trying to get all [of his] charges dropped."  Smith indicated the most custodial time he would consider was one year in the county jail, with credit for the five months he had already served.

Likewise, Smith has not shown he was prejudiced by Thurston's failure to verify independently Smith's ACCA status.  As the district court stressed, prosecutor Parnofiello's information about the ACCA sentence was correct.  On appeal, Smith concedes that he qualified as an armed career criminal based on this

17

Court's <u>Smith</u> precedent at the time, something Thurston would have learned had he researched the issue. Second, Smith rejected the five-year plea deal not because he wrongly believed he was not an armed career criminal, but because he wrongly believed Parnofiello was bluffing about the federal indictment. In other words, even if Thurston had told Smith he had verified Smith's ACCA status, the record demonstrates this information would have made no difference to Smith, who wanted to prepare for trial and call Parnofiello's bluff.

In light of the record evidence, the district court did not err in concluding Smith had not shown prejudice.

## IV. SMITH'S SENTENCE

Pursuant to the ACCA, a defendant convicted under 18 U.S.C. § 922(g) is subject to a mandatory minimum 15-year prison term if he has three prior convictions for a "violent felony" or a "serious drug offense." 18 U.S.C. § 924(e)(l). A "serious drug offense," in turn, is defined in part as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." <u>Id.</u> § 924(e)(2)(A)(ii). We review <u>de novo</u> a district court's determination that a prior conviction qualified as a serious drug offense under the ACCA. <u>United States v. White</u>, 837 F.3d 1225, 1228 (11th Cir. 2016).

18

This Court held in Smith that a prior conviction for sale of cocaine under Fla. Stat. § 893.13, the conviction at issue here, qualifies as a serious drug offense under § 924(e)(2)(A)(ii) of the ACCA. Smith, 775 F.3d at 1267-68.

Consistent with Smith, the Supreme Court recently clarified in Shular v. United States that the ACCA's definition of a serious drug offense "requires only that the state offense involve the conduct specified in the [ACCA]." Shular, ___ U.S. ___, ___140 S. Ct. 779, 782 (2020) (emphasis added). The Supreme Court held that a court determining whether an offense qualifies as a serious drug offense need only consider whether the offense's elements "necessarily entail" the types of conduct identified in the ACCA's definition, rather than engage in a "generic-offense matching exercise." Id. at 783-84 (quotation marks omitted).

In so holding, the Shular Court affirmed this Court's decision in petitioner Shular's case, which relied on Smith, that a prior conviction under Fla. Stat. § 893.13 qualifies as serious drug offense under the ACCA. ___ U.S. at ___, 140 S. Ct. at 785-86. The Supreme Court further noted that the petitioner in Shular had "overstate[d] Florida's disregard for mens rea," because a defendant charged under Fla. Stat. § 893.13(1)(a) who was "unaware of the substance's illicit nature can raise that unawareness as an affirmative defense, in which case the standard jury instructions require a finding of knowledge beyond a reasonable doubt." Id. at 787.

19

Here, the district court did not err in determining that defendant Smith's three prior sale of cocaine convictions under Fla. Stat. § 893.13(1)(a)(1) were serious drug offenses within the meaning of the ACCA. Smith's argument that his prior convictions cannot qualify because the state offense lacks a mens rea element is foreclosed by our <u>Smith</u> precedent and the Supreme Court's precedent in <u>Shular</u>. <u>See</u> <u>United States v. Archer</u>, 531 F.3d 1347, 1352 (11th Cir. 2008) (explaining that a panel of this Court is bound by prior precedent until it is overruled by the Supreme Court or this Court sitting en banc).

**AFFIRMED.**