[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-14133

Non-Argument Calendar

_____

MICHAEL EDWIN HARDING,

Petitioner-Appellant,

*versus*

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket Nos. 2:18-cv-14359-RLR,
2:15-cr-14057-RLR-1

_____

Before JORDAN, LAGOA, and HULL, Circuit Judges.

PER CURIAM:

Michael Harding is a federal prisoner serving a life sentence after pleading guilty to distributing and possessing child pornography (Counts 1-4) and nolo contendere to attempting to coerce a minor to engage in sexual activity (Count 5) and producing child pornography (Count 6). Harding appeals the district court's denial of his 28 U.S.C. § 2255 motion to vacate his convictions on Counts 5 and 6 on grounds that his plea-stage attorney rendered ineffective assistance.[1]

This Court granted a certificate of appealability ("COA") on two issues: (1) "[w]hether the district court violated *Clisby v. Jones*, 960 F.2d 925 (11th Cir. 1992), by failing to address specifically Harding's claim that his plea was involuntary because his attorney did not advise him that he could be subject to post-incarceration civil commitment"; and (2) "[r]egardless of any potential *Clisby* error, whether Harding's attorney rendered ineffective assistance by failing to advise him that his *nolo contendere* plea could result in post-incarceration civil confinement, and, if so, whether that ineffective assistance prejudiced him." After careful review of the record and briefs, we find no *Clisby* error and affirm the district

_____

[1] In the district court, Harding withdrew his § 2255 motion as to Counts 1 through 4 and clarified that he sought to vacate only his nolo contendere plea as to Counts 5 and 6.

court's denial of Harding's ineffective assistance claim as to Counts 5 and 6.

## I.  BACKGROUND

### A.    Offenses and Indictment

In 2015, federal agents investigated Harding, a police officer in Port St. Lucie, Florida, for posting images of child pornography to a Kik Messenger chatroom.  A subsequent search of Harding's residence revealed a thumb drive containing hundreds of still images and videos of minors engaged in sexually explicit conduct with other minors and adults.

Pertinent to Counts 5 and 6, agents also searched a cell phone taken from Harding's nightstand and found, among other things, messages with other individuals about engaging in sexual activity with minors.  Between August and September 2015, Harding had conversations with an individual, identified as "daddydearaimee," in which Harding claimed to have engaged in sexual activity with his nine-year-old stepdaughter.  Harding and daddydearaimee discussed exchanging their minor children for the purposes of engaging in sexual acts with them.  In interviews, Harding's two stepdaughters, aged nine and five, both said Harding had engaged in sexual activity with them.

Additional forensic examination of Harding's cell phone uncovered a thumbnail image, created in November 2014, when a video was recorded on the phone.  The thumbnail image depicted Harding's then eight-year-old stepdaughter performing oral sex on Harding.  In his chats, Harding had discussed the video and said he

had deleted it because he feared getting caught.  A sex toy found with the thumb drive at Harding's residence was determined to contain the stepdaughter's DNA.

In a second superseding indictment, a federal grand jury charged Harding in Counts 1 through 3 with distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1); in Count 4 with possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2); in Count 5 with attempting to entice a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b); and in Count 6 with production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e).

## B. Plea

At a pretrial status conference, the parties advised the district court that Harding planned to enter an open plea of guilty to Counts 1 through 4.  Defense counsel explained that Harding wanted to plead nolo contendere to the remaining two counts because the state of Florida was preparing to charge him with multiple counts of capital sexual battery based on Harding's conduct with his stepdaughters, and Harding did not want to admit facts that could be used against him in his state criminal proceedings.

The district court expressed confusion about why Harding wanted to enter a nolo contendere plea when his advisory guidelines sentence would likely be life imprisonment.  Defense counsel explained that the state charges carried mandatory life sentences, and, in defense counsel's view, a nolo contendere plea

to Counts 5 and 6 gave Harding a better chance of defending himself against those charges.

At a February 2016 plea hearing, Harding entered an open plea of guilty to Counts 1 through 4 and of nolo contendere to Counts 5 and 6. The factual basis for Count 5 was Harding's conversations with daddydearaimee about exchanging their minor children for the purposes of engaging in sexual activity. The factual basis for Count 6 was the deleted video recording of Harding engaging in sexual activity with his minor stepdaughter.

Before accepting Harding's pleas, the district court reviewed, among other things, the minimum and maximum penalties for each count, including a maximum of life imprisonment as to Count 5; that Harding's guidelines sentence could be up to life imprisonment; and that because of the nature of Harding's convictions, he would be subject to substantial restrictions on where he could live, work, and associate if he were released. Harding indicated that he understood all of these things.

The district court did not discuss with Harding the possibility that he could face civil commitment upon release.

## C. Sentencing and Direct Appeal

At Harding's May 2016 sentencing hearing, the district court determined, without objection, that under the Sentencing Guidelines, Harding's total offense level was 43 and his criminal history category was I, which yielded an *advisory* guidelines range of life imprisonment. Defense counsel asked the district court to vary downward from the advisory guidelines sentence of life and

6                    Opinion of the Court                21-14133

impose a 360-month sentence.  The district court imposed a total life sentence comprised of 240-month terms on Counts 1 though 4, a life term on Count 5, and a 360-month term on Count 6, all to be served concurrently.

On direct appeal, Harding argued, *inter alia*, that his plea was involuntary because the district court did not mention during the plea colloquy that he would be required to register as a sex offender and subject to other restrictions under state and federal sex-offender registration laws.  *United States v. Harding*, 696 F. App'x 955, 957 (11th Cir. 2017).  This Court reviewed Harding's challenge to the plea colloquy for plain error, found none, and affirmed his convictions and sentences.  *Id.* at 957-59.

### D.    Current § 2255 Motion

On September 4, 2018, Harding, *pro se*, docketed the present § 2255 motion raising eight claims for relief, including several claims of ineffective assistance of his defense counsel in the district court.  Relevant to this appeal, in Ground Two Harding alleged, under penalty of perjury, that his counsel: (1) failed to properly advise him as to the application of the Sentencing Guidelines, which resulted in an advisory guidelines range of life imprisonment and misadvised him that he would receive no more than a thirty-year sentence;[2] and (2) failed to advise him that his guilty and nolo

---

[2] The ineffective assistance claims raised in the first part of Ground Two are outside the scope of the COA and are discussed only for context.  *See Murray v. United States*, 145 F.3d 1249, 1251 (11th Cir. 1998) (explaining that "appellate review is limited to the issues specified in the COA").

contendere pleas "would subject him to mandatory registration as a sex offender and possible indefinite civil commitment."[3]  Harding also stated under penalty of perjury that had his defense counsel advised him that he would be subject to possible indefinite civil commitment, he would not have entered his pleas and would have insisted on going to trial.

### E.　Evidentiary Hearing

A magistrate judge appointed Harding new counsel and held a two-day evidentiary hearing on Ground Two, as it pertained to Counts 5 and 6.  The majority of the hearing centered on the first part of Ground Two, which challenged counsel's pre-plea advice about the possible length of Harding's sentence.

Both Harding and his former defense counsel testified at the hearing.  Harding testified that his trial counsel discussed the Sentencing Guidelines with him, told him he was looking at a sentence in the thirty-year range, and advised him there was no way he would receive a life sentence.  Harding said he would have insisted on going to trial if he had known his advisory guidelines sentence would be life imprisonment even with a three-level reduction in his offense level for acceptance of responsibility.

Defense counsel, on the other hand, testified that a few months before the plea hearing, he had advised Harding that his

---

[3] The federal civil-commitment statute authorizes the Attorney General to detain a person released from the custody of the Bureau of Prisons if, after a hearing, the person is found to be "sexually dangerous."  18 U.S.C. § 4248.

guidelines sentence would be life but that he did not believe the judge would impose a life term.  Defense counsel described Harding's case as "very difficult" and not "a good trial case" given the government's evidence and said that if the jury believed the thumbnail image on Harding's phone was of Harding having sex with his stepdaughter, "it would be a very short verdict in this case."

Defense counsel explained that "one of the major driving considerations" in Harding's case was the imminent state charges. Defense counsel advised Harding that pleading guilty to Counts 5 and 6 would be an admission that could be used against him in his state case, which was something Harding "wanted to avoid at all costs."  Defense counsel's strategy was to put Harding "in the best light possible" at sentencing by pleading nolo contendere to Counts 5 and 6 and seeking a downward variance from the advisory guidelines sentence of life based on "some very good mitigation."  Defense counsel testified that he explained this strategy to Harding, who understood it and agreed that "the better choice was to enter a plea" of nolo contendere to Counts 5 and 6 rather than go to trial.

At the hearing, Harding testified that, based on his experience as a police officer, he knew convicted sex offenders are required to register and have mandatory reporting requirements. However, at the hearing, no evidence was presented about what Harding knew, or what advice defense counsel gave or did not give him, about the possibility of post-incarceration civil commitment.

Nor did Harding testify that he would have insisted on going to trial had he been advised of the possibility of civil commitment.

## F.    Denial of Harding's § 2255 Motion

The magistrate judge issued a report and recommendation ("R&R"), recommending that Harding's § 2255 motion be denied in full.

The R&R described Harding's Ground Two as whether "counsel failed to advise him that a plea would subject him to a possible life sentence and to mandatory registration as a sex offender and possible indefinite civil commitment." With regard to civil commitment, the R&R noted that Harding relied on this Court's decision in *Bauder v. Department of Corrections*, 619 F.3d 1272 (11th Cir. 2010). In *Bauder*, this Court held that defense counsel's affirmative misadvice—that a state defendant's conviction would not subject him to Florida's civil commitment statute—was deficient performance under *Strickland v. Washington*, 466 U.S. 668 (1984). 619 F.3d at 1274-75.

In recommending that "this portion of Claim 2 should be denied," the R&R noted, *inter alia*, that Harding, as the movant, had the burden to prove his ineffective assistance claim, but had "not put on any testimony that he received any misadvice regarding any indefinite civil commitment or registration as a sex offender." As to the life sentence portion of Claim 2, the R&R discredited Harding's testimony and credited trial counsel's

testimony that he advised Harding of the potential life sentence and thus "did not misadvise [Harding]."[4]

Over Harding's objections, the district court adopted the R&R and denied his § 2255 motion.

## II.  DISCUSSION

### A.    *Clisby* Error

As already noted, this Court granted a COA on whether the district court committed *Clisby* error by failing to address Harding's claim that his attorney did not advise him that he could be subject to post-incarceration civil commitment.

Under *Clisby v. Jones*, district courts must resolve all claims for relief raised in a habeas petition prior to granting or denying relief.  960 F.2d 925, 936 (11th Cir 1992) (en banc); *see also Long v. United States*, 626 F.3d 1167, 1169 (11th Cir. 2010) (explaining that under *Clisby*, "any and all cognizable claims" should be included when conducting a merits review).  A claim for relief "is any allegation of a constitutional violation," and "an allegation of one constitutional violation and an allegation of another . . . constitute two distinct claims for relief, even if both allegations arise from the same alleged set of operative facts." *Clisby*, 960 F.2d at 936.  If the district court fails to address all claims prior to issuing judgment,

---

[4] The R&R also determined that even if Harding had been misadvised that he faced only a thirty-year sentence, Harding had not shown any prejudice because, during his plea colloquy, the district court advised him of the potential life sentence, and Harding "acknowledged that possibility."

we "will vacate the district court's judgment without prejudice and remand the case for consideration of all remaining claims." *Id.* at 938.

Consistent with *Clisby*, the district court must "facilitate meaningful appellate review by developing adequate factual records and making sufficiently clear findings as to the key issues." *Long*, 626 F.3d at 1170. "[R]eformulat[ing]" or "reframing" a movant's claim is permissible, so long as the district court "get[s] to the root of the problem." *Senter v. United States*, 983 F.3d 1289, 1294 (11th Cir. 2020). We review *de novo* the legal question of whether the district court violated the rule in *Clisby*. *Dupree v. Warden*, 715 F.3d 1295, 1299-1300 (11th Cir. 2013).

Here, the district court did not commit *Clisby* error. The R&R, adopted by the district court, addressed each alleged failure by defense counsel asserted in Ground Two, including Harding's claim that his defense counsel failed to advise him of the possibility of civil commitment upon his release from prison. The district court correctly identified this claim and specifically addressed *Bauder*, the precedent Harding relied on for his civil commitment claim. By analyzing the civil commitment claim under *Bauder*, the district court reached "the root of the problem." *See Senter*, 983 F.3d at 1294.

While the district court discussed Harding's claims about sex-offender registration and civil commitment together in the same subsection, it concluded as to *both* claims that Harding failed to carry his evidentiary burden as the § 2255 movant because he

did not testify about defense counsel's "misadvice" as to either mandatory sex-offender registration or the possibility of civil commitment.    This finding is sufficiently clear to permit meaningful appellate review. *See Long*, 626 F.3d at 1170.

In sum, the district court's resolution of Harding's civil-commitment ineffective assistance claim, while brief, was sufficient to comply with *Clisby*.    We therefore turn to the merits of Harding's claim that his defense counsel was ineffective by failing to advise Harding of the risk of civil confinement.

## B.    Ineffective Assistance General Principles

A movant under § 2255 bears the burden to prove he is entitled to relief. *Beeman v. United States*, 871 F.3d 1215, 1222 (11th Cir. 2017).    To show ineffective assistance of counsel, a defendant must show *both* that: (1) his counsel's performance was deficient, meaning it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced his defense, that is, there was a reasonable probability that the results of the proceeding would have been different absent counsel's errors. *Strickland*, 466 U.S. at 687-88, 694.

In reviewing a denial of a § 2255 motion, we review the district court's legal conclusions *de novo* and its factual findings for clear error. *Tribue v. United States*, 929 F.3d 1326, 1328 n.2 (11th Cir. 2019).    Likewise, whether a movant's counsel is ineffective is "a mixed question of law and fact" subject to *de novo* review. *See Holladay v. Haley*, 209 F.3d 1243, 1247 (11th Cir. 2000).    We may affirm the denial of a § 2255 motion on any ground supported by

the record, regardless of the ground stated in the district court's order or judgment. *Beeman*, 871 F.3d at 1221.

*Strickland*'s familiar two-pronged test applies to whether counsel provided ineffective assistance in connection with the defendant's plea. *Riolo v. United States*, 38 F.4th 956, 967 (11th Cir. 2022). As to the first prong, the defendant must show his attorney's representation in the guilty plea context fell below an objective standard of reasonableness. *Id.* This Court has held that defense counsel's affirmative misrepresentation during plea negotiations that the defendant's no contest plea would not subject him to post-incarceration civil commitment constituted constitutionally deficient performance. *Bauder*, 619 F.3d at 1274-75 (relying on *Padilla v. Kentucky*, 559 U.S. 356 (2010), which held that attorneys must advise clients when their guilty pleas are likely to result in removal from the United States).

As for the prejudice prong, the movant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985); *see also Diveroli v. United States*, 803 F.3d 1258, 1263 (11th Cir. 2015). "Moreover, to obtain relief on this type of claim, a [movant] must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Diveroli*, 803 F.3d at 1263 (quotation marks omitted).

However, the Supreme Court has admonished courts to *"not upset a plea solely because of post hoc assertions* from a defendant

about how he would have pleaded but for his attorney's deficiencies.   Judges should instead look to *contemporaneous* evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 582 U.S. 357, 369 (2017) (emphases added).  Thus, "[t]he defendant's own conclusory *after-the-fact assertion* that he would have accepted a guilty plea, without more, is insufficient to satisfy the first prong of the prejudice test." *United States v. Smith*, 983 F.3d 1213, 1222 (11th Cir. 2020) (emphasis added) (quotation marks omitted); *see also Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991) (concluding petitioner failed to establish prejudice where he offered only "after the fact testimony concerning his desire to plead").

Because the Supreme Court's *Lee* decision is particularly instructive as to contemporaneous versus post hoc assertions, we briefly summarize it.  In *Lee*, the defendant, a lawful permanent resident of 35 years, was primarily concerned with whether a criminal conviction would affect his immigration status.  582 U.S. at 360-61.  Lee's attorney assured him, incorrectly, that his guilty plea to possession of ecstasy with intent to distribute would not result in his deportation.  *Id.* at 361-62.  Because Lee "had no real defense to the charge," going to trial would have been very risky.  *Id.* at 360-61.  Based on his attorney's assurances that he would not be deported, Lee decided to accept a plea deal to obtain a lighter sentence than he would have faced had he gone to trial.  *Id.* at 360-61.

After learning he faced mandatory deportation at the end of his sentence, Lee filed a § 2255 motion alleging ineffective assistance of counsel. *Id.* at 361-62. At an evidentiary hearing, both Lee and his plea-stage attorney testified that avoiding "deportation was the determinative issue" in deciding whether to plead guilty or go to trial. *Id.* at 362 (quotation marks omitted). Lee testified that he questioned his defense counsel so often about his immigration status that defense counsel became upset and admonished him for always worrying about something he did not need to worry about. *Id.* Defense counsel testified that, although Lee's case was weak, he would have advised Lee to go to trial had he known Lee would be deported upon pleading guilty. *Id.*

The Supreme Court concluded that Lee had shown he was prejudiced by his counsel's erroneous advice under the "unusual circumstances" of his case. *Id.* at 369. As noted earlier, the Supreme Court distinguished between "post hoc assertions" from a defendant and "contemporaneous evidence" from discussions at the time of the plea. *See id.* The Supreme Court emphasized the undisputed testimony from Lee and his defense counsel that at the time of the plea, "deportation was the determinative issue in Lee's decision whether to accept the plea deal" and that "Lee would have gone to trial if he had known about the deportation consequences." *Id.* Because Lee's claim that had he known he would be deported, he would not have accepted a plea was "backed by substantial and uncontroverted evidence," the Supreme Court concluded that Lee had demonstrated "that, but for [his] counsel's errors, he would not

have pleaded guilty and would have insisted on going to trial." *Id.* at 371 (alteration in original) (quoting *Hill*, 474 U.S. at 59).

## C.    Harding's Ineffective Assistance Claim

In Ground Two of his § 2255 motion, Harding averred, under penalty of perjury, that his defense counsel failed to advise him that his plea would subject him to possible indefinite civil commitment. While there was no testimony on this point at the evidentiary hearing, the government does not dispute Harding's sworn statement.

Instead, the parties vigorously dispute whether defense counsel's silence—rather than the affirmative misadvice in *Bauder*—regarding exposure to civil commitment can constitute deficient performance. We need not, and do not, resolve that performance issue because, even assuming *arguendo* that defense counsel's failure to advise Harding of the potential risk of civil commitment after his life sentence was objectively unreasonable performance, Harding has not shown he was prejudiced as a result. *See Holladay*, 209 F.3d at 1248 (explaining that because both prongs of *Strickland* must be met, the reviewing court "need not address the performance prong if the defendant cannot meet the prejudice prong").

Harding did not carry his burden to prove there was a reasonable probability that, but for his trial counsel's failure to advise him of the possibility of post-incarceration civil commitment, he would have insisted on going to trial. *See Diveroli*, 803 F.3d at 1263. According to former trial counsel's statements at

the pretrial status conference in Harding's criminal proceedings and his credited testimony at the § 2255 evidentiary hearing, the most significant factors in Harding's decision to enter a plea of nolo contendere to Counts 5 and 6 was (1) to prevent harm to Harding's defense to impending state charges for which Harding faced a *mandatory* life sentence; and (2) to avoid a possible life sentence in federal court (by improving his chances of a downward variance from the *advisory* guidelines sentence of life). These factors suggest, if anything, that the mere *possibility* of civil commitment after Harding served his federal sentence would not have caused him to insist on going to trial on those two counts and risk harming his state court defense.

Moreover, neither Harding nor his former defense counsel even mentioned civil commitment during their hearing testimony. In other words, unlike in *Lee*, here Harding did not offer any, much less substantial, *contemporaneous* evidence suggesting that had he known of the possibility of post-incarceration civil commitment, he would have rejected his defense counsel's strategy to enter a nolo contendere plea and instead gone to trial on Counts 5 and 6. *See Lee*, 582 U.S. at 362, 369. And absent any such contemporaneous substantiating evidence, Harding's bald, post hoc assertion in his § 2255 motion that he would have insisted on going to trial, cannot satisfy *Strickland*'s prejudice prong. *See id.* at 369; *Smith*, 983 F.3d at 1222; *Diaz*, 930 F.2d at 835.

### III.  CONCLUSION

The district court addressed Harding's civil-commitment ineffective assistance claim in Ground Two as required by *Clisby* and properly denied that claim because Harding failed to satisfy his burden to show he suffered prejudice as a result of his defense counsel's alleged deficient performance.  For these reasons, we affirm the district court's denial of Harding's § 2255 motion.

**AFFIRMED.**