[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————

No. 23-10857

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JUSTIN KELLY,

Defendant-Appellant.

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:21-cr-00204-CEH-SPF-2

————————————

Before WILSON, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

Justin Kelly appeals his convictions for possession with intent to distribute 40 grams or more of fentanyl (Count 1), distribution and possession with intent to distribute a mixture and substance containing fentanyl resulting in death (Count 2), and possession of a firearm and ammunition by a convicted felon (Count 8), as well as his sentence of life imprisonment. Kelly argues that the court erred when it denied his motion for judgment for acquittal for counts one and two because there was not sufficient evidence that he supplied the fentanyl that killed the victim or that the fentanyl was the "but for" cause of the victim's death. He argues that the court erred in denying his motion for judgment of acquittal for count eight because there was not sufficient evidence that he constructively possessed the firearm found in the storage unit. Additionally, he argues that the court erred when it found that his prior Florida cocaine-based drug convictions were serious drug offenses, and therefore, erred in applying an enhancement under the Armed Career Criminal Act ("ACCA").

**I.**

We review *de novo* whether there was sufficient evidence to support a conviction. *United States v. Jiminez*, 564 F.3d 1280, 1284 (11th Cir. 2009). In reviewing the sufficiency of the evidence, we view the record in the light most favorable to the government, resolving all reasonable inferences in favor of the verdict. *Id.* The

evidence will be sufficient to support a conviction if "a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *Id.* at 1284-85 (quotation marks omitted).

The test for sufficiency is the same, regardless of whether the evidence is direct or circumstantial, but where the government relied on circumstantial evidence, reasonable inferences must support the conviction. *United States v. Martin*, 803 F.3d 581, 587 (11th Cir. 2015). We will assume that the jury resolved all questions of credibility in a manner supporting the verdict. *Jiminez*, 564 F.3d at 1285. The evidence need not exclude every reasonable hypothesis of innocence for a reasonable jury to find guilt beyond a reasonable doubt. *United States v. Cruz-Valdez*, 773 F.2d 1541, 1545 (11th Cir. 1985) (*en banc*). Instead, the jury is free to choose among alternative, reasonable interpretations of the evidence. *Id.*

The Supreme Court has held that, "where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury." *Burrage v. United States*, 571 U.S. 204, 218-19 (2014).

"It is well settled that possession of contraband may be constructive as well as actual and may be proven by circumstantial evidence." *United States v. Kincade*, 714 F.2d 1064, 1066 (11th Cir. 1983). To prove actual possession, the government must prove that the defendant had either physical possession of or personal dominion over the thing allegedly possessed. *United States v. Derose*, 74

F.3d 1177, 1185 (11th Cir. 1996).  "Constructive possession exists when a defendant has ownership, dominion, or control over an object itself or dominion or control over the premises . . . in which the object is concealed."  *United States v. Leonard*, 138 F.3d 906, 909 (11th Cir. 1998).

Here, there was sufficient evidence to convict Kelly of counts 1, 2, and 8.  First, there was sufficient evidence that Kelly's fentanyl was the fentanyl that killed E.L.  Kinney testified that Kelly was his only supplier of fentanyl, and that Kinney was E.L.'s only supplier of fentanyl.  Kinney testified that E.L. purchased fentanyl from him on the night of his death, and later that night E.L. died from an overdose.  Therefore, there were reasonable inferences that the jury could make that the fentanyl that killed E.L. was supplied by Kelly.  *Martin*, 803 F.3d at 587.

Second, there was sufficient evidence that the fentanyl supplied by Kelly was the but-for cause of E.L.'s death.  There was evidence that E.L. was found with ooze coming out of his mouth which was consistent with a fentanyl overdose.  Dr. Ignacio, a medical examiner who had done thousands of autopsies, testified that she determined that E.L. died from fentanyl toxicity.  There was also evidence that E.L. had 2.5 nanograms of fentanyl in his body at the time of his death, which was enough fentanyl to kill someone.  Dr. Nelson, the chief medical examiner, also agreed with Dr. Ignacio's determination that E.L. died from a fentanyl overdose.  While Kelly argues that there is evidence that alcohol played a role in E.L.'s death, the jury did not need to find that argument

compelling because of Dr. Ignacio and Dr. Nelson's testimony that E.L. died from fentanyl toxicity. *Cruz-Valdez*, 773 F.2d at 1545. Therefore, there was sufficient evidence for the jury to conclude that the fentanyl supplied by Kelly was the but-for cause of E.L.'s death.

Third, there was sufficient evidence that Kelly possessed the firearm found in the storage unit. The storage unit that the firearm was found in was in Kelly's name. Detective Collins testified that the keys that the police used to open the storage unit were obtained from Kelly on the night of his arrest. Mary Herron, manager of the storage facility, testified that in order to obtain a storage unit the person must give their name and driver's license and that she would give that person a unique code to access the facility. There was evidence that Kelly signed the storage rental agreement for the unit that the firearm was found in. Therefore, there was evidence that the jury could have used to conclude that Kelly had dominion and control over the unit where the firearm was found, and thus, that he had constructive possession of the firearm. *Leonard*, 138 F.3d at 909.

Therefore, there was sufficient evidence to convict Kelly of counts 1, 2, and 8 and the district court did not err when it denied the motion for acquittal.

**II.**

We review whether a prior state conviction qualifies as a serious drug offense under the ACCA *de novo*. *United States v. Smith*, 983 F.3d 1213, 1222-23 (11th Cir. 2020). We apply the categorical

approach to determine whether a defendant's prior state conviction qualifies as a serious drug offense under the ACCA. *United States v. Jackson (Jackson II),* 55 F.4th 846, 850 (11th Cir. 2022), *petition for cert. granted*, 143 S. Ct. 2457 (2023). Under the categorical approach, we consider the statutory definition of the state offense rather than the facts of the crime itself. *Id.* A state conviction qualifies only if the state statute under which the conviction occurred defines the offense in the same way as, or more narrowly than, the ACCA's definition of a serious drug offense. *Id.*

Florida's controlled substances schedules included ioflupane until 2017. *See* 2017 Fla. Sess. Law Serv. Ch. 2017-110 (C.S.H.B. 505) (West). The federal controlled substance schedules also included ioflupane until 2015. *See Schedules of Controlled Substances: Removal of Ioflupane From Schedule II of the Controlled Substances Act*, 80 Fed. Reg. 54715-01 (Sep. 11, 2015).

In *Jackson I*, we vacated and remanded a defendant's ACCA-enhanced sentence, holding that the appellant's cocaine-related Fla. Stat. § 893.13 offenses did not qualify as serious drug offenses under the ACCA. *United States v. Jackson (Jackson I)*, 36 F.4th 1294, 1306 (11th Cir. 2022). We determined that the federal controlled substances schedules that defined a serious drug offense under the ACCA were those in effect when the defendant committed his federal offense and that those schedules did not cover ioflupane at the time he committed his federal offense. *Id.* at 1299-1302. Since Florida's definition in § 893.13 covered ioflupane when he was convicted of his prior cocaine-related offenses, § 893.13's

23-10857                Opinion of the Court                7

controlled-substance element was broader than the relevant version of the federal controlled substances schedules, and his prior cocaine-related convictions thus did not qualify as serious drug offenses. *Id.* at 1303-04.

We then vacated our decision in *Jackson I*, and subsequently held that the appellant's state conviction under § 893.13 qualified as a serious drug offense. *Jackson II*, 55 F.4th at 861-62. We held that the ACCA's definition of a serious drug offense incorporates the version of the federal controlled substances schedules in effect when the defendant was convicted of the prior state drug offense. *Id.* at 854. We concluded that the appellant's 1998 and 2004 Florida cocaine-related convictions qualified as serious drug offenses because Florida's controlled substances schedules included ioflupane until 2017 and the federal controlled substance schedules also included ioflupane until 2015. *Id.* at 851 & nn.3-4. Thus, as of the time Jackson was convicted of the prior cocaine-based offenses in 1998 and 2004, Jackson's state convictions under § 893.13 were defined in the same way that the ACCA defined a serious drug offense. Therefore, Jackson's prior convictions qualified for the enhancement under the ACCA.

Similarly, Kelly's prior Florida cocaine-based drug convictions all predated 2015—i.e. at a time that Florida's cocaine-based crimes were defined in the same way that the ACCA defined a serious drug offense—and therefore qualify as serious drug offenses for the ACCA enhancement. This issue is controlled by our decision in *Jackson II*. The prior-panel-precedent rule requires subsequent

8                    Opinion of the Court                    23-10857

panels to follow the precedent of the first panel to address the relevant issue, unless and until the first panel's holding is overruled by us sitting *en banc* or by the Supreme Court. *Scott v. United States*, 890 F.3d 1239, 1257 (11th Cir. 2018). The granting of *certiorari* alone does not affect our precedent. *Schwab v. Sec'y, Dep't of Corr.*, 507 F.3d 1297, 1298 (11th Cir. 2007).

Here, following *Jackson II*, the court did not err in determining that Kelly's state drug convictions were serious drug offenses and therefore did not err in applying the ACCA enhancement.

**AFFIRMED.**